Houck, J.
The conceded facts as presented by the pleadings in the case and agreed to by counsel in oral argument are:
Plaintiff is a corporation duly organized, incorporated and existing under the laws of Ohio, with its principal place of business at Lancaster, Fair-field county, Ohio. The defendant, The Ohio Light & Power Company, is a public utility corporation *81 organized under the laws of Ohio, and is made up by the consolidation and combination of a large number of separate and formerly independent electricity producing and distributing companies. The defendant, Edward Matt, is the superintendent of the said The Ohio Light & Power Company. The defendant has constructed its service lines and has established it's service distributing equipment and facilities in and through Fairfield county, Ohio, and is now engaged in selling and distributing electricity to its consumers and customers in various municipalities and localities in said county. Plaintiff is the owner of and is engaged in operating a plant and factory for the manufacture of glassware, the same being located in Hocking township, Fairfield county, Ohio, and contiguous to the city of Lancaster. In September, 1915, The Hocking Glass Company and The Ohio Light & Power Company entered into a contract for the purchase and sale of electric energy, under the terms and provisions of the schedule at that date on file and in effect with the Public Utilities Commission of Ohio. Said contract was made upon what is known as Schedule No. 11, applicable to wholesale power, and appears in P. U. C. O. No. 3, of The Ohio Light & Power Company’s schedule for Lancaster, covering electric service, issued May 1, 1915, and becoming effective June 1, 1915. On May 29, 1917, The Ohio Light & Power Company filed Supplement No. 2, P. U. C. O. No. 3, this supplement becoming effective June 30, 1917. This supplement sought to cancel and supersede Schedule No. 11 of The Ohio Light & Power Company, set forth in P. U. C. O. No. 3. On August *82 1, 1917, The Ohio Light & Power Company rendered the plaintiff a bill for electric energy used during the month of July, 1917, at the rates and under the terms and conditions set forth in the new schedule. The plaintiff refused to pay the bill as rendered, but in place thereof forwarded The Ohio Light & Power Company a check for electric energy delivered to it during the month of July preceding, at the rates set forth in Schedule No. 11, in effect at the time of the making of the contract, as aforesaid,. and stipulating that it was in full payment of all electric. energy delivered during the month of July, 1917. The Ohio Light & Power Company refused to accept this check, and notified the plaintiff that unless payment of its account was made in accordance with the terms and provisions of its claimed new schedule that it would, at the expiration of ten days from date of such notice, disconnect its lines from the property of plaintiff, and would no longer furnish the plaintiff electric energy under existing conditions.
Under the terms of the franchise by which The Ohio Light & Power Company operates in the city of Lancaster, Ohio, there are no provisions as to the rates which may be charged by the company, and, further, the city of Lancaster has enacted no rate-regulating ordinances establishing the rates which may be charged by public utilities operating electric light, heating and power plants in said city.
The relief sought by plaintiff in its petition is that said defendants be enjoined from shutting off the service of electricity from plaintiff’s plant and *83 factory, and from disconnecting the service lines and service distributing facilities of defendants from plaintiff’s motors, air-compressors, and other equipment and machinery in plaintiff’s plant and factory, and from withdrawing from or depriving plaintiff of said service of defendants, and from doing any act or thing, directly or indirectly, that would operate, or would tend, directly or indirectly, to deprive plaintiff of a sufficient supply of electricity to maintain plaintiff’s said plant' and factory in full operation; that upon final hearing a permanent injunction be granted, and for such other relief as may be proper in the premises.
Learned counsel for plaintiff lay down three propositions which they claim are decisive of the present case and fully authorize the granting of the relief prayed for in plaintiff’s petition:
1. That the legislature of Ohio has not conferred upon the Public Utilities Commission of Ohio authority to fix basic rates, save and except in cases of appeal to that body, thereby leaving it entirely open and free for parties to fix their own rates for services by agreement.
2. That the parties hereto had a right to enter into a private contract, and that such contract is .valid, and can not be set aside or abrogated by the filing of a future schedule or schedules with the Public Utilities Commission of Ohio.
3. That under the facts and the law, defendants •and each of them are estopped from setting up the defenses claimed by them to be a bar to.the relief Bought by plaintiff.
To us there is but one question involved in this suit, namely, Did the filing of the new schedule *84 with the Public Utilities Commission of Ohio, by The Ohio Light & Power Company, after the making of the contract between it and The Hocking Glass Company, set aside and abrogate the previous contract? It therefore follows that in order to properly solve this question it is necessary to determine the purpose, scope and extent of such parts and provisions of what is known as the public utilities act of Ohio as may be applicable to the facts in this case, and which are contained in Code Sections 614-14 to 614-20, inclusive.
It is maintained by counsel for plaintiff that a proper and legal adoption of a new schedule of a public utility by the Public Utilities Commission of Ohio does not supersede or supplant a contract previously entered into.
It must be conceded that when the legislature of Ohio passed the public utilities act it did so for /some reason, and that it had some object in view at the time. This leads us to inquire what it was. The public utilities in our state had become numerous, and there was almost endless litigation resulting therefrom. Our courts had become clogged with this class of litigation, and the Public Utilities Commission was created by law as and for a clearing house through and by which the rights of public utilities and those dealing with them could be properly determined, settled and disposed of, without burdening our courts with that kind of litigation, which in many instances lasted for years and in the end seemingly failed to satisfy either litigants or the public in its conclusions. And the process of reaching these conclusions was entirely too slow. True, the act in question is *85 what may be termed progressive legislation, but we are living in a time and age of advancement and must be prepared to meet such and conform our business affairs thereto.
An examination of the provisions of this act leads us at once to conclude that in many ways the act is most drastic, and especially wherein it changes or modifies the ancient rule as to contract, but to this we must accede, because it is the law and was the law when the contract upon which plaintiff relies was entered into. We are bound to know the law, and, it being statutory and in full force at the time of the making of said contract, the statute must and does govern.
After the initial filing of rates, as required in Section 614-16, the further provision is found in Section 614-20 that such rates so established are not to be changed unless ordered by the Public Utilities Commission, save and except by thirty days’ notice to said commission, or by the filing of new schedules thirty days prior to the time they are to take effect. By the conceded facts it is shown this procedure was clearly followed by The Ohio Light & Power Company.
Plaintiff further- urges that defendants, having induced it to act to its substantial and irreparable injury and damage in changing its plant so as to permit of the defendants’ service exclusively, that they, the defendants, are estopped from maintaining their alleged defenses.
We do not feel inclined to discuss this question at length, but we will content ourselves by saying that upon the facts and law of the case this claim of plaintiff is not well founded.
*86 Courts are not authorized to add to or take from the powers, duties, etc., created by legislative enactment. The right and authority to do just what plaintiff complains of here was delegated by the legislature of Ohio to the Public Utilities Commission under and by virtue of the provisions of the public utilities act. By virtue of that act the defendant company had full and complete authority to do just what it has done in the premises, and the courts can not legally take from it this right.
Mr. Justice Day, of the United States Supreme Court, has laid down a rule of law clearly applicable to this case, and we hold that it is decisive of it. While the rule was applied to an act of congress, yet it is clearly applicable to a law enacted by a state legislature. We refer to the case of Armour Packing Co. v. United States, 209 U. S., 56, in which Justice Day, speaking for the court, says, at page 81:
“It may be, as urged by petitioner, that this construction renders impossible the making of contracts for the future delivery of such merchandise as the petitioner deals in, and that the instability of the rate introduces a factor of uncertainty, destructive of contract rights heretofore enjoyed in such property. This feature of the law, it is insisted, puts the shipper in many kinds of trade at the mercy of the carrier, who may arbitrarily change a rate, upon the faith of which contracts have been entered into. But the right to make such regulations is inherent in the power of Congress to legislate respecting interstate commerce, and such considerations of inconvenience or hard *87 ship address themselves to the law-making branch of the government. New Haven Railroad Company v. Interstate Commerce Commission, 200 U. S., 399. It may be that such contracts should be recognized, giving stability to rates for limited periods; that the contracts being filed and published, and the rate stipulated known and open to all, no injustice would be done. But, as we have said, such considerations address themselves to Congress, not to the courts. It is the province of the judiciary to enforce laws constitutionally enacted, not to make them to suit their own views of propriety or justice
The rule is well known that courts are bound to construe and interpret laws as they come from the legislature, and can not modify or change them at will, although such laws may seemingly work ’ a hardship.
If the public utilities act of Ohio, as it now stands, is found inadequate, or does not fully meet the demands of the people, the remedy is with the legislature and not the courts.
Under the facts, and the law governing them, we find for the defendants. Petition of plaintiff dismissed.

Petition dismissed.

Powell and Shields, JJ., concur.