Richards, J.
The plaintiff is a manufacturing company doing business in the City of Bowling Green, and the defendant is a public utility company, located in said city, engaged in furnishing electric current for purposes of heat, light and power.
In the year 1917 the parties to this litigation entered into a contract by the terms of which the *272 defendant company was to furnish to the plaintiff company electric current for use in conducting its business for the period of two years, at certain rates specified in the contract. Current was furnished by the defendant pursuant to this contract, and at the prices named therein, for a portion of the period named, but in the year 1918 the defendant declined to furnish current any longer at the rates specified in the contract, claiming that those rates had been superseded by higher rates, as set forth in a revised schedule approved by the Public Utilities Commission of Ohio. The plaintiff insists that its contract must be carried out for the two-year period named therein, while the defendant insists that the contract was in law subject to the power of regulation by the Public Utilities Commission of Ohio, and, having been so regulated and higher rates established, that it, the defendant, is .authorized to charge such' higher rates.
There has been much litigation within the last few years arising out of situations quite similar to that disclosed by the evidence in this case, and as a result of such litigation various matters have been adjudicated and are no longer open to controversy. In the case of Union Dry Goods Co. v. Georgia Public Service Corp., 248 U. S., 372, decided January 7, 1919, it was held that private contracts with a public service company, fixing rates, are subject to the police power of the state and may be regulated thereby, and that the exercise of such power and the fixing of a higher rate does not impair the -obligation of a contract. The establishing of rates to be charged by public utilities in Ohio is within the control of the Public Utilities Commission of the *273 state, except in so far as the same is vested in municipalities by virtue of the exceptions in the statutes. Under Section 614-44, General Code, municipal corporations are authorized to fix public utility rates by ordinance. By virtue of the provisions of Section 614-47, General Code, valid contracts for supplying electric current by a public utility company are not subject to control or modification by the Public Utilities Commission of the state, if the rates have been lawfully fixed by a municipality under Sections 614-44, 3982 and 3983, General Code. This principle has been clearly enunciated by the supreme court of Ohio in Ohio River Power Co. v. City of Steubenville, 99 Ohio St., 421.
This leaves for determination in the case at bar only the question whether the municipality by an effective ordinance, duly accepted, has fixed and established the rates which control the parties to this litigation. The power conferred upon the municipality to fix the rates to be charged for electric current supplied by the public utility must be exercised by an ordinance effective for that purpose, as required by Section 614-44, General Code, and held in City of Cincinnati v. Public Utilities Commission, 96 Ohio St., 270.
We proceed then to determine, under the evidence, whether the city council of the city of Bowling Green did pass an ordinance effective for this purpose. The record discloses that an ordinace was introduced, entitled as follows:
“An ordinance authorizing and directing the Director of Public Service of Bowling Green, Ohio, *274 to advertise for bids and enter into a contract for lighting the streets, avenues, and alleys and public places in the City of Bowling Green, Ohio, for a period of ten years beginning November 1st, 1912.”
This ordinance was enacted in the year 1912, which was after the statute empowering municipalities to fix rates, and before the amendments to the constitution of Ohio, adopted that year, became effective.
Section 1 of the -ordinance empowered and directed the director of public service to advertise for bids for the lighting of the streets, avenues, alleys and public places of the city, for the period named in accordance with the plans, specifications and profiles on file in the office of the director of public service. Section 2 of the ordinance authorized and directed the director of -public service to enter into a contract with the lowest and best bidder for “such” lighting for a period of ten years, beginning November 1, 1912, and in accordance with the plans, specifications and profiles on file. It is said, and we assume the statement to be true, that the plans and specifications on file not only covered the lighting of the public streets of the municipality but also included rates for current for lighting and power for private consumers, but the ordinance itself, which is the source of authority, embraced only lighting the streets -and other public places and authorized a contract for such lighting. It is entirely immaterial that the specifications on file include rates for current for private purposes, because the municipality by the terms of the ordinance has seen fit only to go so far as to authorize a contract for lighting -the public streets and other public places in the city, *275 even though it be conceded that the ordinance was duly and legally passed.
The ordinance clearly failing to embrace the furnishing of current to private individuals, it necessarily follows that the contract was subject to regulation by the Public Utilities Commission. The case in this respect is similar to that of Hocking Glass Co. v. Ohio Light & Power Co., 11 Ohio App., 80. In that case the opinion discloses that the city of Lancaster had not fixed the rates which could be charged by the utility company and had enacted no rate-regulating ordinance for that purpose.
It results from what has been said that the municipality not having by any effective ordinance established the rates which the defendant company might charge private consumers, and the Public Utilities Commission of the state having duly established rates and approved a schedule fixing higher rates than those embraced in the contract between the parties to this litigation, such higher rates established by the Public Utilities Commission are lawful and must be held applicable.

Decree for defendant.

Kinkade and Chittenden, JJ., concur.