## UNION DRY GOODS COMPANY *v.* GEORGIA PUBLIC SERVICE CORPORATION.

### ERROR TO THE SUPREME COURT OF THE STATE OF GEORGIA.

No. 87.    Argued December 18, 1918.—Decided January 7, 1919.

A State fixed reasonable rates to be charged by a corporation for supplying electricity to the inhabitants of a city, which superseded lower rates agreed on in an existing time contract made previously between the company and a consumer. *Held,* a legitimate effect of a valid exercise of the police power, not impairing the obligation of the contract or depriving the consumer of property without due process.
145 Georgia, 658, affirmed.

THE case is stated in the opinion.

*Mr. R. Douglas Feagin* and *Mr. Rudolph S. Wimberly,* for plaintiff in error, submitted. *Mr Oliver C. Hancock* was also on the brief.

*Mr. Roland Ellis,* with whom *Mr. C. A. Glawson* and *Mr. Thomas W. Hardwick* were on the brief, for defendant in error.

Mr. Justice Clarke delivered the opinion of the court.

The Georgia Public Service Corporation and The Union Dry Goods Company, both corporations organized under Georgia law and doing business in Macon, on July 18, 1912, contracted together in writing for the term of five years, the former to supply electric light and power to the latter, which agreed to pay stipulated rates for the service.

The contract was performed for almost two years until in April, 1914, when the Dry Goods Company refused to pay a bill for service rendered during March, in which a rate higher than that of the contract was charged. The Service Corporation claimed that this rate was authorized and required by an order of the Railroad Commission of Georgia, entered after investigation and hearing.

Soon thereafter the Dry Goods Company commenced this suit to compel specific performance of its contract, which had three years yet to run; to enjoin the Service Corporation from charging the higher rate; and from executing a threat to cut it off from a supply of electricity, because of failure to pay the increased rate.

The trial court and the Supreme Court of Georgia both held against the claims of the Dry Goods Company and the case is here for review on writ of error.

The order of the Railroad Commission of Georgia, entered on February 24, 1914, reads:

"Ordered: That on and after March 1, 1914, and until the further order of this Commission, the following schedules of rates shall be the maximum schedules of rates to be charged by the Georgia Public Service Corporation."

Then follow the rates complained of.

No opinion was rendered in this case, but on the same date, in prescribing the same rates in a proceeding instituted by the Macon Railway & Light Company, also of Macon, the Commission said:

"The rates prescribed herein are in the opinion of the Commission at this time just and reasonable. We have no power to compel the company to accept less, except as implied in the power to prevent unlawful discrimination." "All special rates, whether in the form of contracts for definite periods, or informal, in excess of these prescribed rates are illegal."

Of the several claims pressed in argument, we need notice only two: That the obligation of the contract of July 18, 1912, was impaired, and that the plaintiff in error was deprived of its property without due process of law, by the decision of the Supreme Court of Georgia, holding that the rates prescribed by the Railroad Commission were valid and superseded those of the contract between the parties.

Long prior to the contract of 1912 the Railroad Commission was given jurisdiction over, and power to regulate, the rates of electric light and power companies by statutes in form not greatly different from those of many other States, and, since no reason is assigned for assailing their validity, other than the result in this case, they must be accepted as valid laws.

As we have seen, the rates prescribed by the Commission were declared by it to be reasonable and the Service Company was given authority to charge them. The plaintiff in error did not assert in its pleadings, or offer evidence tending to prove, that these Commission rates were unreasonable, but complained only that they were higher than the contract rates and, for this reason, it argued that to give effect to the order, as the State Supreme Court did, violated the provisions of the Constitution referred to.

The presumption of law is in favor of the validity of the order and the plaintiff in error did not deny, as it could not successfully, that capital invested in an electric light and power plant to supply electricity to the inhabitants

of a city is devoted to a use in which the public has an interest which justifies rate regulation by a State in the exercise of its police power. *Munn* v. *Illinois,* 94 U. S. 113; *Budd* v. *New York,* 143 U. S. 517; *German Alliance Insurance Co.* v. *Lewis,* 233 U. S. 389, 407.

Thus it will be seen that the case of the plaintiff in error is narrowed to the claim that reasonable rates, fixed by a State in an appropriate exercise of its police power, are invalid for the reason that if given effect they will supersede the rates designated in the private contract between the parties to the suit, entered into prior to the making of the order by the Railroad Commission.

Except for the seriousness with which this claim has been asserted and is now pursued into this court, the law with respect to it would be regarded as so settled as not to merit further discussion.

That private contract rights must yield to the public welfare, where the latter is appropriately declared and defined and the two conflict, has been often decided by this court. Thus in *Manigault* v. *Springs,* 199 U. S. 473, 480, it was declared that:

"It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from properly exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected."

This on authority of many cases which are cited.

In *Hudson County Water Co.* v. *McCarter,* 209 U. S. 349, 357, it is said that:

"One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject matter."

In *Louisville & Nashville R. R. Co.* v. *Mottley*, 219 U. S. 467, 482, this is quoted with approval from *Knox* v. *Lee*, 12 Wall. 457, 550, 551, viz:

"Contracts must be understood as made in reference to the possible exercise of the rightful authority of the Government, and no obligation of a contract can extend to defeat the legitimate government authority."

In the same report, in *Chicago, Burlington & Quincy R. R. Co.* v. *McGuire*, 219 U. S. 549, at p. 567, it is said:

"There is no absolute freedom to do as one wills or to contract as one chooses. The guaranty of liberty does not withdraw from legislative supervision that wide department of activity which consists of the making of contracts, or deny to government the power to provide restrictive safeguards. Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community."

In *Atlantic Coast Line R. R. Co.* v. *Goldsboro*, 232 U. S. 548, 558, the court said:

"It is settled that neither the 'contract' clause nor the 'due process' clause has the effect of overriding the power of the State to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare of the community; that this power can neither be abdicated nor bargained away; and is inalienable even by express grant; and that all contract and property rights are held subject to its fair exercise."

And in *Rail & River Coal Co.* v. *Ohio Industrial Commission*, 236 U. S. 338, 349, the state of the law upon the subject is thus aptly described:

"This court has so often affirmed the right of the State in the exercise of its police power to place reasonable restraints like that here involved, upon the freedom of contract that we need only refer to some of the cases in passing."

These decisions, a few from many to li':e effect, should suffice to satisfy the most skeptical or belated investigator that the right of private contract must yield to the exigencies of the public welfare when determined in an appropriate manner by the authority of the State, and the judgment of the Supreme Court of Georgia must be

*Affirmed.*