## PUBLIC UTILITIES COMMISSION OF KANSAS et al. v. WICHITA R. & LIGHT CO.*

(Circuit Court of Appeals, Eighth Circuit.   July 15, 1920.)

No. 5529.

1. **Electricity ⬗11—Public Utilities Commissions can raise noncompensatory rates, though they do not render utility insolvent.**
   A state Public Utilities Commission can enter an order permitting an electric company to charge certain classes of its customers rates exceeding those fixed by the contract with those customers, if the rates fixed by the contract did not compensate for the services rendered, even though the performance of services at the contract rates would not render the utility insolvent or prevent performance of its public service.

2. **Constitutional law ⬗135—Order of Public Utilities Commission raising utility rates above contract rates does not impair contract.**
   Order by a state Public Utilities Commission, permitting the utility corporation to charge rates in excess of those fixed by its contract with a consumer, does not impair the obligation of a contract.

3. **Electricity ⬗11—Public Utilities Commission may make orders changing contract existing before commission is created.**
   The Kansas Public Utilities Commission can make an order permitting an electric corporation to charge more than the rates specified in a contract with a consumer, which was entered into before the statute creating the commission was enacted.

4. **Electricity ⬗11—Public Utilities Commission can remit surcharge on contract rates.**
   The Kansas Public Utilities Commission has power to enter an order permitting an electric corporation to make specified surcharges in addition to the rates specified by its contracts with certain classes of consumers.

5. **Electricity ⬗11—Kansas commission need not make special finding of fact.**
   Since the act creating the Kansas Public Utilities Commission and defining its duties and powers (Laws 1911, c. 238) does not require the commission to make special findings of fact, failure to make such finding before entering an order permitting a raise in electric rates is immaterial.

6. **Electricity ⬗11—Public Utilities Commission can regulate rates of company conducting business in one city.**
   The fact that an electric company conducted business wholly within one city does not affect the Utilities Commission's power to permit a raise in its rates.

7. **Constitutional law ⬗62—Giving Public Utilities Commission power to fix rates not delegation of legislative power.**
   The Kansas Act (Laws 1911, c. 238) granting the Public Utilities Commission authority to make rates does not violate any provision of the United States Constitution or of the state Constitution as a delegation of legislative power.

⬗For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied December 9, 1920.

8. **Electricity ☞11—Jurisdictional facts in petition for rate increase sufficient, although not shown in order.**
The petition by an electric corporation for a rate increase, to the Kansas commission is as much a part of the record as the commission's order, in view of Public Utilities Commission Act (Laws 1911, c. 238) §§ 13, 20, so that commission's jurisdiction sufficiently appears, if the necessary facts are stated in the petition, but not in the order.

9. **Electricity ☞11—Rate order presumed reasonable, in absence of evidence heard by commission.**
Under Public Utilities Commission Act Kan. § 18, making the order of the commission prima facie reasonable, the court cannot find the commission's order allowing a rate increase to an electric company unreasonable or without substantial evidence, where the record shows that evidence was introduced before the commission, but fails to show what the evidence was.

10. **Constitutional law ☞242—Rate order, applying to all of class, is not discriminatory.**
An order by a Public Utilities Commission, permitting a surcharge on electric consumers in specified classes, is not discriminatory, where the order applies equally to all members of same class.

Sanborn, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit by the Wichita Railroad & Light Company against the Public Utilities Commission of the State of Kansas and others. Decree for complainant, and defendants appeal. Reversed, with directions.

This action was instituted by the appellee against the Public Utilities Commission of the state of Kansas, to restrain the commission from putting into effect an order authorizing the Kansas Gas & Electric Company to add a surcharge to its rates for electricity furnished to consumers in the state of Kansas, classified according to the quantities consumed. A temporary restraining order was granted by the court. By leave of the court the appellant Kansas Gas & Electric Company was permitted to intervene as a party defendant. For convenience the parties will be referred to in this opinion, the appellee as the Railroad & Light Company, the appellant Public Utilities Commission as the Commission, and the appellant Kansas Gas & Electric Company, as the Gas & Electric Company.

Answers were filed, and thereupon the Railroad & Light Company filed a motion for a final decree upon the pleadings and exhibits. The exhibits filed with the complaint are: Exhibit A is the order of the Commission sought to be enjoined; Exhibit B is a copy of the contract entered into between the Gas & Electric Company and the Railroad & Light Company on May 2, 1910, to continue until November 30, 1930; Exhibit C is a copy of the application of the Gas & Electric Company to the Commission for permission to add a surcharge to certain of its rates on electricity supplied to its patrons in the state of Kansas. Upon a hearing the court held the order of the Commission complained of void and made the injunction perpetual.

The Railroad & Light Company in its complaint charges that, after having received notice from the Commission of the filing of the petition and the date set for the hearing thereof, it appeared and objected to the Commission's jurisdiction. This was by the Commission overruled. The ground upon which it objected was that there was a contract between the Gas & Electric Company and the plaintiff, which contract specifically fixed the rates and charges under which the Gas & Electric Company was bound to furnish it electrical current from the date of the contract until November 30, 1930; but, notwithstanding its objection, the Commission on March 25, 1918, granted the application of the Gas & Electric Company, with some modifications.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Another ground upon which it attacks the order of the Commission is that it was without jurisdiction or authority to determine any question relative to the plaintiff's business, in that it conducts its business wholly within the city of Wichita, and is not subject, under the law, to control or regulation by the Commission. Another ground set up is that its contract with the Gas & Electric Company was made and executed prior to the enactment of the law creating the Commission; that therefore the order of the Commission violates the constitutional provision prohibiting a state from enacting any law impairing the obligation of contracts.

It is next claimed that the added charges by the order of the Commission are preferential and discriminatory against large consumers of electricity, and especially against the plaintiff, for the reason that the rates as fixed are upon a scale, increase as the volume of consumption increases, and thereby is in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States. It is next claimed that the order fixes the rates unreasonably high and are confiscatory.

The order of the Commission recites that after hearing the evidence the Commission found that the Gas & Electric Company should be authorized and permitted to add to its existing rates for electricity the following surcharge: For the first 100 KWH per month, no surcharge; for the next 14,900 KWH per month, one mill surcharge per KWH; for the next 20,000 KWH per month, two mills surcharge per KWH; for all excess over 30,000 KWH per month, three mills surcharge per KWH—and thereupon made the order authorizing the company to add to its existing rates for electricity supplied all consumers using over 100 KWH per month the surcharge set out, until the further order of the Commission.

The contract between the Railroad & Light Company and the Gas & Electric Company was executed on May 2, 1910, and was to continue until November 30, 1930. It provided for the price the Railroad & Light Company should pay for electrical capacity and energy furnished by the Gas & Electric Company. There are many provisions, such as are usually inserted in contracts of this nature, which it is not necessary to state, as they are not material to the issues involved in this cause.

The application of the Gas & Electric Company to the Commission for permission to add a surcharge to certain of its rates states that the schedules of rates then in force was filed with the Commission on May 4, 1914; that the rates were based upon the cost of producing and distributing electrical energy at that time, and yielded a reasonable return upon the value of its property used in producing and distributing electrical energy in the state; that since then the cost of producing and distributing such electrical energy has increased enormously, on account of the increased cost of fuel and labor due to the fact that the nation is engaged in war. As a result of this increase the cost of producing energy for the year 1917 was 100 per cent greater than the cost of production for the year 1914, all on account of such increase in the cost of the production and distribution; that its net income for the year ending December 31, 1917, was approximately $190,000 less than it would have been if it could have operated under the normal conditions existing in 1914, at the time its rates were first installed; that, if said rates are continued in effect, the result will be disastrous to your petitioner, depriving it of a reasonable return upon the value of its said property, and making it impossible to find a market for the securities which it must issue in order to provide funds with which to make improvements, additions, and betterments which are necessary to furnish proper and adequate service.

It further states that in December, 1916, being of the opinion that it would be able to reduce its rates for residential and commercial lighting, it filed a schedule of rates with the Commission, under which it proposed to put in effect a gradual reduction of such rates, such reduction extending over a term of 10 years, and requested an order authorizing it to make such reductions; that the Commission has not yet acted on that petition. Still on January 1, 1917, it did reduce its rates for residential and commercial lighting in accordance with its proposed schedules; that the effect of such proposed reductions for the year 1918 will further reduce its net income in the sum of approxi-

mately $30,000, making a total loss of net earnings for the year 1918 of at least the sum of $220,000; that in order to meet this situation, and to enable it to earn an amount sufficient to offset the loss from the conditions set out, it asks for authority to add to its existing rates the surcharge proposed. It is then stated that there are approximately 19,900 consumers served, but that 17,000 consumers use 100 KWH or less per month, and therefore would not be affected by the proposed schedule of surcharges. To proportion the surcharges equitably among the remainder of its consumers, fuel is approximately 75 per cent. of the cost of generating electricity, and therefore the surcharge, for the purpose of reimbursement, should be so adjusted that the surcharge should increase in proportion to the amount of energy consumed. The percentage of increase fixed by such surcharge over existing rates is therefore increased in proportion to the amount of consumption. The last step in the surcharge schedule offered affects at the present time 6 consumers, and the last two steps 38 consumers. The schedule proposed by the Electric & Gas Company was: For the first 100 KWH per month, no surcharge; for the next 1,000 KWH per month, 12 mills net per KWH; for the next 10,000 KWH per month, 9.5 mills net per KWH; for the next 1,000,000 KWH per month, 8 mills net per KWH; for all excess, 3.5 mills net per KWH.

The intervening petition of the Gas & Electric Company, which is in the nature of an answer to the complaint and was treated as such, stated that the Public Utilities Commission of the state was created by an act of the Legislature of the state of Kansas in the year 1911, and is vested with full power, authority, and jurisdiction to supervise and control public utilities doing business in the state of Kansas, and fix and regulate the rates to be charged by said utilities for service; it admits the execution of the contract and the order of the Commission set out in the complaint and exhibits, until the further order of the Commission; by reason of said order of the Commission it claims it is lawfully authorized to make the surcharges fixed in the order of the Commission; that although the surcharge, so far as it affects the plaintiff, became effective on April 1, 1918, the plaintiff has failed to pay it, and the amount due from it up to December 31, 1918, amounts to $9,088.18; that the temporary injunction granted by the court on April 26, 1918, prevented it from enforcing or attempting to enforce the order of the Commission of March 25, 1918; that the bond required of the plaintiff, when the temporary injunction was granted, was for the sum of $20,000; that the intervener has an interest in this action, and is the party entitled to the benefits to be derived from the order of the Public Utilities Commission; therefore it asks for the dissolution of the injunction and to recover from the plaintiff the amount due it from the plaintiff on account of the surcharge.

Upon these pleadings and exhibits a final decree was entered, making the injunction perpetual.

H. L. McCune, of Kansas City, Mo., and F. S. Jackson, of Topeka, Kan. (McCune, Caldwell & Downing, of Kansas City, Mo., on the brief), for appellants.

T. F. Doran, of Topeka, Kan., and Henry I. Green, of Urbana, Ill. (Green & Palmer, of Urbana, Ill., Harris & Harris, of Wichita, Kan., Ferry & Doran, of Topeka, Kan., and William H. Lee, of Urbana, Ill., on the brief), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge (after stating the facts as above). The learned trial judge held that, although appellee had a contract with the Gas & Electric Company made on May 2, 1910, to remain in force until November 30, 1930, the Commission could, under the police power of the state, to prevent injustice, and unreasonable and extortionate rates

for service by the Gas & Electric Company, exercise the power to raise the rates, if necessary to prevent a loss, but that the facts disclosed by the record did not justify the making of the order to add a surcharge on the rates fixed by the contract with the plaintiff.

In behalf of the Railroad & Light Company it is claimed that the petition of the Gas & Electric Company did not state facts authorizing the Utilities Commission to take cognizance of the petition, as it failed to show that the contract rates are discriminatory and will result in injustice to the public, nor that without this surcharge the company would be unable to discharge its public duties, or that they will be impaired; nor does it claim that insolvency would result unless permitted to add an additional surcharge to the contract price. It is further claimed that the petition failed to show any reason or justification for annulling the contract, of the parties; that no facts are stated in the order of the Commission authorizing the exercise of its statutory power as prescribed in the public utilities statute; that there is no finding of the unreasonableness of the rates existing between the parties nor any discrimination between this contract and the rates charged other members of the public.

The Commission made no order against the Railroad & Light Company; there is nothing in the order referring to any contract in existence; all the order attempts to do, and does, is to classify the customers of the Gas & Electric Company and allow a surcharge on three of the four classes, in which they are divided. That the Commission has, under the law creating it, authority to classify customers, is not questioned, nor can it well be.

[1] The failure of the Gas & Electric Company to state in its petition that the rates then in force would cause it to become insolvent, or would prevent it from discharging its duty to the public, did not deprive it of the right to ask for compensatory rates from the large consumers, if the rates charged these consumers are noncompensatory, even if, when added to the rates charged the smaller consumers, the net income is sufficient to prevent the company from becoming insolvent, or enable it to discharge its duty to the public. In Northern Pacific Ry. v. North Dakota, 236 U. S. 585, 594, 596, 597, 35 Sup. Ct. 429, 432, 433 (59 L. Ed. 735, L. R. A. 1917F, 1148, Ann. Cas. 1916A, 1), the Supreme Court of North Dakota had held:

"In order to establish such a noncompensatory rate to be confiscatory (referring to rate on one article, lignite coal), it must further appear that any deficit under the rate affects the net intrastate freight earnings materially, and reduces them to a point where they are insufficient to amount to a reasonable rate of profit in the amount of the value of the railroad property within the state contributing to produce such net earnings."

This the Supreme Court of the United States held to be erroneous. The court said:

"The state cannot estimate the cost of carrying coal by throwing the expense incident to the maintenance of the roadbed, and the general expenses, upon the carriage of wheat, or the cost of carrying wheat by throwing the burden of the upkeep of the property upon coal and other commodities. * * * The outlays that exclusively pertain to a given class of traffic must be assigned to that class, and the other expenses must be fairly apportioned."

The same principle was announced in Norfolk & Western Ry. v. Conley, 236 U. S. 605, 35 Sup. Ct. 437, 59 L. Ed. 745. In that case the act involved was a passenger rate on railroads. The Supreme Court of West Virginia had followed the rule adopted by the Supreme Court of North Dakota in the Northern Pacific R. R. Case. The Supreme Court, reversing the decree, held:

"The state may not select either of these departments [freight or passenger] for arbitrary control. Thus it would not be contended that the state might require passengers to be carried for nothing, or that it could justify such action by placing upon the shippers of goods the burden of excessive charges in order to supply an adequate return for the carrier's entire service."

In the instant case the Commission must have found the allegations in the Gas & Electric Company's petition for the surcharge, that in the generation of electrical energy for large consumers fuel is approximately 75 per cent. of the cost of generation, and that the low rates given to these large consumers, in the schedule then in force, were noncompensatory by reason of the large increase in the cost of the coal used for the generation of electricity, and that for this reason there should be a surcharge sufficient to allow some profit on the investment, from the electricity furnished these large consumers.

[2] That the effect of the order would be to nullify the contract theretofore entered into by the parties does not make the order obnoxious to the constitutional provision prohibiting states to enact laws impairing the obligation of contracts has been conclusively determined in Union Dry Goods Co. v. Georgia Public Service Corporation, 248 U. S. 372, 39 Sup. Ct. 117, 63 L. Ed. 309. The court in its opinion said:

"Except for the seriousness with which this claim has been asserted and is now pursued into this court, the law with respect to it would be regarded as so settled as not to merit further discussion. That private contract rights must yield to the public welfare, where the latter is appropriately declared and defined and the two conflict, has been often decided by this court"—citing a number of authorities.

[3] The same conclusion was reached in Producers' Transportation Co. v. Railroad Commission, 251 U. S. 228, 40 Sup. Ct. 131, 64 L. Ed. ——, where the court said:

"That some of the contracts before mentioned were entered into before the statute was adopted or the order made is not material."

This disposes of the claim that the Commission was without authority to make the order, to affect the contract of the plaintiff, because it was made before the act creating the Public Utilities Commission was enacted.

In Kansas City Bolt & Nut Co. v. Kansas City Light & Power Co., 275 Mo. 529, 204 S. W. 1074, it was held: Rates fixed by contract with a public service company for electricity to be supplied, are superseded by rates fixed by the Public Service Commission, since the police power of the state cannot be abridged by contract. On writ of error from the Supreme Court, this judgment was affirmed by a

per curiam opinion upon the authority of Union Dry Goods Co. v. Georgia Public Service Corporation, supra.

[4] It is next claimed that the Commission had no authority, under the act creating it, to make such an order; but that has been adversely decided by the Supreme Court of Kansas in State ex rel. v. Kansas Postal Telegraph & Cable Co., 96 Kan. 298, 150 Pac. 544.

[5] That the Commission, when making the order complained of, made no special findings of fact, is wholly immaterial, as there is nothing in the act creating the Commission and defining its duties and powers requiring it. As said in Detroit, etc., R. R. Co. v. Railroad Commission, 171 Mich. 335, 137 N. W. 329:

"It is unfortunate that the courts do not have the assistance which would be derived from a finding made by the Commission which would distinctly state the ultimate facts found and the factors, at least the controlling factors, considered in determining whether a rate was or was not reasonable."

Springfield Gas & Electric Co. v. Barker (D. C.) 231 Fed. 331, 344, and Public Utilities Commisson v. Springfield Gas Co., 291 Ill. 209, 125 N. E. 891, relied on by counsel for appellee are not applicable, as the statutes of Missouri and Illinois expressly provided that the Commission shall make and file its findings of fact in writing. In the Barker Case the opinion quotes that section of the Missouri statutes. There is no such provision found in the Kansas statute.

The only act in writing required by the statute is found in section 16 of the act (Laws 1911, c. 238), which provides:

"All orders and decisions of the Public Utilities Commission whereby any rates * * * are altered, changed, modified, fixed or established, shall be reduced to writing, and a copy thereof, duly certified, shall be served on the public utility or common carrier affected thereby, by registered mail."

[6] The fact that plaintiff's business is conducted wholly within the city of Wichita is immaterial. Pawhuska v. Pawhuska Oil Co., 250 U. S. 394, 39 Sup. Ct. 526, 63 L. Ed. 1054.

[7] It is also claimed that the act granting the Commission authority to make rates is unconstitutional, as being a delegation of legislative power. That it is not violative of any provision of the national Constitution was conclusively determined in Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014, and followed by all the national courts ever since. That it does not violate any provision of the Constitution of the state of Kansas was determined in State v. Johnson, 61 Kan. 803.

[8] It is next contended that the order of the Commission does not state facts necessary to show that it had jurisdiction, and the rule that when a special tribunal, created with special powers to act, not in conformity with the rules governing actions at common law inter partes, the record must show all the facts necessary to establish jurisdiction, is invoked. But the petition of the Gas & Electric Company to the Commission is as much a part of the record as the order, and it contains all the allegations necessary for the Commission to act in the matter. The petition is a part of the record. The allegations in the petition determine the jurisdiction. Hartford Life Ins. Co. v. Johnson (C. C. A.) 268 Fed. 30, decided June 28, 1920.

·· The act creating the Commission, by section 20, expressly authorizes the Commission to act:

"Whenever any common carrier or public utility governed by the provisions of this act shall desire to make any change in any rate, joint rate, toll, charge or classification or schedule of charges, or in any rule or regulation or practice pertaining to the service or rates of any such public utility or common carrier, such public utility or common carrier shall file with the Public Utilities Commission a schedule showing the changes desired to be made and put in force by such public utility or common carrier," etc.

Section 13 of the act provides:

"It shall be the duty of the Commission, either upon complaint or upon its own initiative, to investigate all rates, * * * and if after full hearing and investigation the commission shall find that such rates, , * * * are unjust, unreasonable, unjustly discriminatory or unduly preferential, the commission shall have power to fix and order substituted therefor such rate or rates, * * * as shall be just and reasonable."

[9] Section 18 of that act makes the orders of the Commission prima facie reasonable. As the record fails to show what evidence was before the Commission when it made its order, and recites that evidence was introduced, there is nothing to enable the court to find that the order was unreasonable, or without substantial evidence. The presumption is that there was substantial evidence to warrant the findings made.

[10] The claim that the order of the Commission is discriminatory against the plaintiff is clearly without merit. It applies to each party within the classes enumerated in the order. A rate which affects equally all in the same class, when the classifying is not arbitrary, cannot be said to be discriminatory.

Counsel for appellee cite Kaul v. American Independent Telephone Co., 95 Kan. 1, 147 Pac. 1130, and Mollohan v. Atchison, Topeka & Santa Fé Ry., 97 Kan. 51, 154 Pac. 248, L. R. A. 1918A, 175, in support of the contention that such an order as made by the Commission in the instant case is discriminatory, and therefore void. Neither of these cases sustain this contention. In the Kaul Case the Telephone Company sought to raise its rates without any action of the Commission authorizing it, and it was held that the act did not automatically overthrow contracts, but that the Commission must first act. In the Mollohan Case it was held that the special privilege to stop cattle in transit is unlawful, until the schedules had been filed with and approved by the Commission, and the privilege is open to all shippers on equal terms. If it fails to grant the privilege to all shippers on equal terms, it is discriminatory.

The court below erred in refusing to dissolve the temporary injunction and making it perpetual. The case is reversed, with directions to proceed in conformity with the views expressed herein.

SANBORN, Circuit Judge (dissenting). On May 2, 1910, the Gas & Electric Company made a valid contract with the Railroad & Light Company to supply it with electric energy from that date until November 30, 1930, at rates specified therein. On May 4, 1914, the Gas & Electric Company filed its schedule of these rates with the Commission,

and they took effect pursuant to the act of Legislature of Kansas of May 22, 1911, creating the Public Utilities Commission of that state (General Statutes Kansas 1915, c. 97), and became the lawful established and reasonable rates for this service. On January 22, 1918, the Gas & Electric Company filed a petition with the Commission upon which it has made an order raising these rates.

Under the police power of the state and the statutes of Kansas the Commission has the jurisdiction and the authority to raise the rates for the service of public utility corporations prescribed by lawful contracts between it and others, in cases where the agreed rates are confiscatory, unduly discriminatory, and in cases where the good order, health, comfort, or public welfare requires such action; but in my opinion the jurisdiction of the Commission in this direction extends no further. For example, it does not extend to the changing of contract rates of public utilities with private parties not demanded by the public welfare, because one of the parties to one of these contracts was induced to agree to it by mistake, or by accident, or by the fraud or the deceit of the other party to it. It is no ground, either at law or in equity, either in the courts or elsewhere, for the modification or abrogation of a contract for electric energy or for other public utilities for a long term of years, that the contract turns out to be more profitable during some of the years of the term, or more burdensome during other years of the term, to one or the other of the parties, than that party anticipated at the time it signed the agreement that it would be. Marble Co. v. Ripley, 10 Wall. 339, 355, 356, 357, 19 L. Ed. 955; Texas Co. v. Central Fuel Oil Co., 194 Fed. 1, 21, 114 C. C. A. 21, 41.

When carefully analyzed and reduced to its lowest term, the only ground for the raising of the contract rates stated in the petition of the Gas & Electric Company, and the only basis for the order of the Commission raising them upon that petition, is, in my opinion, that the contract rates, which the petition shows were so much more profitable during the first years of the term of the contract than it anticipated that in December, 1916, the Gas & Electric Company filed with the Commission and asked approval of a schedule of reduced rates, became in 1917 so much less profitable that it filed its petition for this raise. The petition does not show what profits the Gas & Electric Company derived from the contract rates during the years prior to 1917. It does not show that the contract rates have been or will be confiscatory. It does not show that the welfare of the public demands the increase, and in my opinion it states no facts or case within the jurisdiction of the Commission, its order was made without jurisdiction, and it is void.

For these reasons I am unable to concur in the opinion and the disposition of this case.