## CUDAHY PACKING CO. v. CITY OF OMAHA et al. *

(Circuit Court of Appeals, Eighth Circuit. October 29, 1921.)

No. 5730.

1. **Waters and water courses** ⟷203(7)—**Packing company held party in interest to agreement between water company and city.**

   Where city accepted deed of water system, containing a provision that transfer was subject to obligations entered into by the water company with private consumers in the city, which were to be assumed by the city, it must be held that such provision was entered into for the benefit of a packing company having a contract with the water company to receive water at a specified price, and a demand on the part of the packing company and institution of suit against the city to recover the difference between the contract price and the price charged by the city, which was paid under protest, was an acceptance by the packing company of the contract; but the contract between the packing company and the water company would have created no obligation on the part of the city, in the absence of an agreement to be bound thereby and to perform the unexpired term.

2. **Waters and water courses** ⟷183(3)—**City of Omaha had power to purchase waterworks system.**

   The city of Omaha, Neb., had the unquestioned power under the laws of the state and ordinances passed in pursuance thereof to purchase in 1912 a water system and to pay for the same.

3. **Waters and water courses** ⟷203(7)—**Assumption of obligations of contracts held consideration on purchase price of waterworks system.**

   City of Omaha, Neb., in purchasing a waterworks system in 1912, had full power and authority to agree as a part of the consideration for the

---

⟷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied April 1, 1922.

conveyance that it would carry out and perform contracts between the water company and consumers, and, having so agreed, it was not within the power of the city, or a water board, to advance water rates as to a consumer receiving water under a contract.

4. **Waters and water courses** ☞183(3)—**Agreement of city to be bound by contracts of water company on transfer of property was binding on water board.**

Although a separate corporation, the water board of the city of Omaha, Neb., in 1912, was bound by an agreement by the city to assume obligations of contracts between water company and consumers as part of consideration for conveyance of the water system to the city by the water company.

Stone, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Action by the Cudahy Packing Company against the City of Omaha and others. Judgment for defendants, and plaintiff brings error. Reversed, and new trial ordered.

Yale C. Holland, of Omaha, Neb. (C. W. Sears, J. A. C. Kennedy, George L. De Lacy, and Charles F. McLaughlin, all of Omaha, Neb., on the brief), for plaintiff in error.

John Lee Webster, of Omaha, Neb. (W. C. Lambert, of Omaha, Neb., on the brief), for defendants in error.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

CARLAND, Circuit Judge. This action was brought by the Cudahy Packing Company, hereafter called packing company, against the city of Omaha, hereafter called city, the water board of the city of Omaha, hereafter called water board, and the Metropolitan water district of the city of Omaha, hereafter called water district, for the purpose of recovering the sum of $47,461.49, with interest, as having been unlawfully exacted for water service. At the trial of the action counsel for both parties moved for a directed verdict. The court directed a verdict against the packing company. Alleged errors relating to the admission of evidence have been assigned; but as these alleged errors cannot, in our opinion, affect the decision which must be made, we confine our consideration to the question as to whether or not the trial court erred in directing a verdict as it did, the material facts being largely undisputed.

Before proceeding to consider the facts immediately connected with this case, we may state that the record shows beyond question that by the litigation between the city and the Omaha Water Company, hereafter called water company, some things were settled. Among these were the propositions that the city had the power to purchase the waterworks system of the water company and exercised said power by purchasing, on June 20, 1912, from said water company, the entire system of waterworks operated and owned by said water company, wherever located, together with the appurtenances thereunto belonging, for the sum of $6,392,720.17, and other considerations mentioned

in the deed of conveyance; that said deed contained, as one of its clauses, after the description of the property granted and the habendum clause, the following language:

"Subject, nevertheless, to the obligations entered into by the said the Omaha Water Company with private consumers in said city of Omaha, and in the cities of South Omaha, and Florence, and in the village of Dundee and in East Omaha, and with said municipalities, under or by virtue of any of the ordinances, agreements and arrangements hereinbefore set forth, all of which obligations are to be assumed by said city of Omaha."

No court ever decreed that the city should assume any of the obligations mentioned in said clause, but it voluntarily and of its own free will accepted as grantee said deed of conveyance without making any objections to said clause.

Coming now to the case in hand, it appears that at the time of said conveyance there was a written contract in existence between the water company and the packing company, whereby the latter was entitled to receive from the former, for a period of ten years from June 1, 1904, water at the rate of 4½ cents per 1,000 gallons at its plant in the city of South Omaha. In this opinion no distinction is made between the water company existing under the laws of the state of Illinois and the water company existing under the laws of the state of Maine, as there is no question but that the former conveyed all its rights of property to the latter. The Legislature of Nebraska, by an act approved February 2, 1903 (Laws 1903, c. 12), created a water board for metropolitan cities. Omaha was the only city of that class. This board was charged with the determination of water rates, the conditions and methods of water service, and the collection of all charges for water service or the sale of water. These powers were enlarged by amendments passed in 1905 and 1911. On April 15, 1913, the Legislature of Nebraska passed an act (Laws 1913, c. 143) under which the water district was on July 23, 1913, duly organized, and took over the management of the waterworks system in the cities of Omaha and South Omaha, and thereby superseded the water board. On July 1, 1912, the city having acquired the system of waterworks from the water company, as above stated, through said water board, refused to perform the contract between the water company and the packing company for its unexpired term of two years, less one month, and compelled the packing company to pay for all water received 8 cents per 1,000 gallons. The difference between the contract price of 4½ cents and 8 cents was paid by the packing company under protest, and it is this difference, with interest, that this suit is brought to recover.

[1, 2] We are of the opinion that this action is properly brought by the packing company, for the following reasons: The packing company was a private consumer of water in the city of South Omaha. By the sale of the waterworks system to the city the water company had rendered itself unable to perform the unexpired term of the contract between it and the packing company. The packing company was thereby compelled to look to the city for its supply of water, as the city was the only party which could perform the service. So that it

may be truly said that the agreement above quoted from the deed of conveyance was entered into for the benefit of the packing company, and it is now the real party in interest. 6 R. C. L. p. 884. The demands on the part of the packing company that the city perform its contract, and the institution of this suit, was an acceptance of the contract. 6 R. C. L. 889. If the city, however, had no power to agree that it would perform, for the unexpired term of two years less one month, the contract between the water company and the packing company, then the judgment below must be affirmed, as the city was under no obligation to perform the contract unless it could lawfully agree so to do. The mere existence of the contract, conceding it to have been legal, created no obligation on the part of the city to perform it. So the whole case must be determined, one way or the other, as we may determine whether the city had or had not the power to make an agreement to perform the unexpired term of the existing contract. In determining this question, however, it will not do to confine our consideration to the power to make rates for water service vested by law in the water board or the water district of the city. As has been before stated, the city had the unquestioned power under the laws of Nebraska, and ordinances passed in pursuance thereof, to purchase the waterworks system and to pay for the same (Omaha Water Co. v. City of Omaha, 162 Fed. 225, 89 C. C. A. 205, 15 Ann. Cas. 498, affirmed 218 U. S. 180, 30 Sup. Ct. 615, 54 L. Ed. 991), and it cannot be doubted but that it was proper and right for the city to agree, as a part of the consideration to be paid for the system of waterworks, that it would perform for a period of less than two years the contract between the water company and the packing company. Presumptively, the city could not have purchased the waterworks system without assuming the performance of the outstanding contracts. This aspect of the case throws light on the extent of the power to purchase, and as an incident thereof the power to assume the performance of the contract in question. Consumers of water had no other source of supply, and if the city did not perform the service no service could be had. Moreover, there was conveyed to the city by the deed of conveyance all existing contracts with private consumers. Morally considered, therefore, there is no question of the propriety of the city's agreement. The ground upon which the trial court based its decision was that as soon as the title of the waterworks system became vested in the city, the power to fix rates for water service, conferred by law upon the water board, became operative, and that the agreement by the city to perform for the unexpired term of the contract between the water company and the packing company, which also became effective at the same time, could be rendered void and of no effect by the exercise by the water board of its power to fix rates. Whatever may be the power of the state, or corporations or boards upon which it has conferred the power to fix rates for service performed by public utilities, notwithstanding the rate fixed by private contract (Union Dry Goods Co. v. Georgia Public Service Com., 248 U. S. 372, 39 Sup. Ct. 117, 63 L. Ed. 309, 9 A. L. R. 1420; Public Utilities Com. v. Wichita R. & Light Co. [C. C. A.] 268 Fed. 37; Omaha Water Co. v. City of

Omaha, 147 Fed. 1, 77 C. C. A. 267, 12 L. R. A. [N. S.] 736, 8 Ann. Cas. 614), the decision of this case cannot rest upon that proposition alone.

[3] We are clearly of the opinion that the city, having the power to purchase the waterworks system and to pay therefor, had full power and authority to agree, as a part of the consideration for the conveyance of the waterworks system and the very contract now under consideration, that it would carry out and perform the short term for which the contract had to run, and that the power to purchase the system of waterworks having been granted by the laws of the state of Nebraska, and ordinances passed in pursuance thereof, and the exercise of this power having been upheld by the highest court of the land, it was not within the power of a mere agency of the city to strike down that power after its lawful exercise, by advancing the rates for water service from $4\frac{1}{2}$ cents to 8 cents per 1,000 gallons. Being of the opinion that the power to fix rates for water service possessed by the water board must be construed with reference to the power of the city to purchase the waterworks system, and as thus construed it was not within the power of the water board to annul the contract made by the city to perform the unexpired term of the contract between the water company and the packing company, we now turn to the last-named contract for the purpose of ascertaining whether there was anything in that contract which rendered its performance by the city unlawful.

[4] In considering this question we must look at the contract as it was made June 1, 1904, between the water company and the packing company, and not under conditions created by the city, or third parties after its assumption by the city. It is urged that the contract was discriminatory when made. The rate was lower than the meter rate prescribed by the water company for private consumers, but it was not lower than the rate prescribed by the water company for all other consumers of water of the same class using the same amount of water. It is further urged that it has been demonstrated since the waterworks system was taken over by the city that the actual average cost of supplying water is much in excess of 8 cents per 1,000 gallons. But if the city lawfully assumed the contract, the fact that for a short period it would not be profitable would be no excuse for refusing to perform it. Other contracts conveyed by the deed of conveyance might be profitable, and the city could not select, for this reason, which contracts it would perform and which it would not. There is no showing that in 1904 the actual cost of supplying water was more than $4\frac{1}{2}$ cents per 1,000 gallons to the water company. It is further claimed that the water board was an independent legal entity, and not bound by the contract made by the city. It is true the water board was a separate corporation, but the waterworks system was the property of the city, and the moneys collected for water service belonged to the city. The exercise of the power to purchase by the city necessarily bound the water board if the contract was legal, and we are of the opinion that it was.

For error in directing a verdict for the defendants the judgment below is reversed, and a new trial ordered.

STONE, Circuit Judge (dissenting). I am compelled to dissent by the following considerations, which seem, to me, controlling: Union Dry Goods Co. v. Georgia P. S. Corp., 248 U. S. 372, 39 Sup. Ct. 117, 63 L. Ed. 309, 9 A. L. R. 1420, is the latest of a long line of cases in the Supreme Court declaring the law that contracts with public service corporations affecting rates to be charged for such service are made subject to the police power of the state to change such rates on the grounds of inadequacy or of discrimination. That rule has been enforced by this court. Public Utilities Commission v. Wichita R. & L. Co. (C. C. A.) 268 Fed. 37. The Omaha Water Company was clearly such a public service corporation. It could not bind itself to any private consumer by contract so as to affect the right of the state to control the rates charged. The contract between the packing company and the water company, here involved, was, under the above line of cases, made subject to state control as to the service charge or rate. The character of the contract, in this respect, could not be affected by its assumption by a purchaser of the business and plant of the water company.

The effect of such purchase was merely to substitute a stranger for one of the contracting parties. It did not alter the obligations of the contract in any other manner. Obviously, an assignment of the contract cannot increase the power of the parties to contract away the declared controlling police power of the state. The city, as furnisher of water to private consumers, could not contract with a consumer for a rate which could not be changed by the state, if such rate proved noncompensatory or discriminatory. What the city could not do directly it could not do indirectly by assuming such a contract already made. The whole situation is comprehended in the statement that the police power of the state to control, within certain limits, charges for public utility services, cannot be abridged or affected by the private contract or conduct of any one.

The mere incidental fact that the unexpired term of the contract was short (two years) cannot affect, much less control, the legal situation. In passing, it may be said that the unexpired term involved in the Union Dry Goods Company Case, supra, was but three years.

Here, it has been demonstrated that the contract rate involved is noncompensatory. Hence the condition authorizing exercise of the state police power as to these rates has arisen, and it has been acted upon by the proper state authority.