Matthias, J.
The plaintiff in error, The Cleveland and Eastern Traction Company, hereafter referred to as the Traction Company, contends that the order of the commission herein is unreasonable and unlawful in that the schedule of rates thereby-approved, in so far as it affects the plaintiff in error, is violative of the terms of a contract entered into between that company and The Cleveland Elec - tric Illuminating Company, hereafter referred to as the Illuminating Company, which contract does not expire until 1923, and in accordance with the terms *217 of which, a rate schedule has been duly filed with the public utilities commission; that such order is also violative of the terms of a contract between the village (now city) of Cleveland Heights, where electric current is furnished the plaintiff in error, which contract was effected by an ordinance of that village ■passed September 20, 1920, and due acceptance of the terms and- provisions thereof by the Illuminating Company; and that the classification of rates in the schedule in question, which has been approved by the commission, is such as to work an unjust diserimination against the plaintiff in error.
The contract between the Traction Company and the Illuminating Company above referred to was entered into July 3, 1912, and by its terms covered a period of ten years, and in accordance with its provisions was by further agreement of the parties extended to June 29, 1923.
The statutes constituting what is known as the public utilities act were passed June 14, 1911 (102 O. L., 549). This act was therefore in force prior to the execution of the contract above referred to. By its provisions every public utility was required to print and file with the commission schedules showing all rates, specifications and charges for every service of each and every kind by it rendered or furnished, and no public utility could charge, demand, accept, receive or collect a different rate, rental, toll or charge for any service rendered or to be rendered than that applicable to such service as specified in its schedule filed with the commission and in effect at the time. It was provided therein that existing contracts executed prior to the passage of such act should not be construed as constituting a discrim *218 ination or undue or unreasonable preference or advantage. But any contract for service entered into by a public utility and a patron thereof subsequent to that date clearly is subject to the supervision of the public utilities commission, and is not binding and enforceable in so far as it conflicts with a finding and order of the commission and the rates thereby approved and established. Patterson Foundry & Machine Co. v. Ohio River Power Co., 99 Ohio St., 429.
In actions brought to test the validity of orders of public utilities commissions which approved and established rates for the service of public utilities in conflict with rates specified by private contract, the supreme court of the United States has frequently declared that “private contract rights must yield to the public welfare, where the latter is appropriately declared and defined and the two conflict. ’ ’ Possibly the latest case where such question was involved and the above declaration made, where the previous leading cases upon the subject are cited, is that of Union Dry Goods Co. v. Georgia Public Service Corp., 248 U. S., 372. In that case it is further held that reasonable rates for electric light and power, prescribed by a state in the exercise of its police power, through the instrumentality of a railroad commission, are not repugnant to the contract or due process of law clause of the federal constitution merely because, if given effect, they will supersede the rates designated in a private contract between an electric light company and a customer, entered into prior to the making of the order by the commission.
*219 It is quite clear that by the action affirming a rate fixed in a schedule duly filed there could be no. possible violation of any right of a patron under a private contract with an electric light and power company executed subsequent to the enactment of a law under which the provisions of any such contract and the rates fixed thereby are inoperative and invalid if they conflict with rates either theretofore or thereafter established by the commission.
It is contended that the rate fixed in the schedule in question is in conflict with the terms of a rate-ordinance of the city of Cleveland Heights, duly accepted by the Illuminating Company. Where a contract has been effected by a municipality through the passage of an ordinance and the acceptance thereof by an electric lighting company, the public utilities commission is not empowered to authorize such public utility to exact a rate, payment or charge in excess of that agreed upon. (City of Lima v. Public Utilities Commission, 100 Ohio St., 416, and Link v. Public Utilities Commission, 102 Ohio St., 336.) But it does not appear from the record in this case that the rate and terms fixed in the schedule here in question are in any wise in conflict with the terms and provisions of the ordinance enacted by the city of Cleveland Heights and accepted by the Illuminating Company, for under the specific terms of the schedule in question the rates cannot exceed the maximum and minimum rates fixed by the ordinance. That ordinance fixed a maximum rate for electricity for a period of five years at “five cents per kilowatt hour and a monthly charge not to exceed seventy-five cents per kilowatt or fraction *220 thereof connected.” The schedule in question, and which is here complained of, provides that “the net combined rate shall not exceed five cents per kilo: watt hour except by reason of the minimum charge. * * * The monthly minimum charge is seventy-five cents for each kilowatt of capacity contracted for, but not exceding seventy-five cents per kilowatt or fraction thereof connected.” It is to be seen, therefore, that the rate fixed by the schedule is within the limits specified by the ordinance.
We next come to the question of discrimination. It is contended that the so-called “schedule of rates for combined electric railway and commercial services” unreasonably classifies the plaintiff in error and results in a discrimination against it and in favor of another patron of the Illuminating Company, the Cleveland Railway Company.
By the provisions of Section 614-14, General Code, a public utility is prohibited from exacting a greater charge for service from one person, firm or corporation than from another for a like and contemporaneous service under the same or substantially the same circumstances and conditions. But the provisions of Section 614-17, General Code, authorize a “classification of service based upon the quantity used, the time when used, the purpose for which used, the duration of use, and any other reasonable consideration,” etc.
In this case the public utilities commission found from the evidence that the services rendered to the complainant, The Cleveland and Eastern Traction Company, and to the Cleveland Railway Company, were dissimilar, (a) as to quantity, (b) maximum demand, and (c) the purpose for which used; and *221 further found that the operations of the complainant and the Cleveland Railway Company are not competitive, and that such schedule does provide the same rates for all users of the service similarly situated.
The schedule which applies to the plaintiff in error and of which it complains is denominated “Combined Electric Railway and Commercial Schedule,” in which classification are embraced consumers guaranteeing a minimum demand of 500 kilowatts for combined electric railway and commercial uses, not less than half such demand to be for electric railway use. This classification covers service to interurban companies furnished at or beyond the limits of the city of Cleveland to propel interurban traffic and for resale to its customers for commercial use. The record discloses that one interurban road other than plaintiff in error is a patron of the Illuminating Company, and that others are applicants for service, all of which come within the schedule referred to, and it must be conceded that all properly fall within the same classification and therefore that in this schedule of rates are included those similarly situated.
It is disclosed that there is also a residence schedule, wherein a different rate is prescribed for residence service; also a commercial schedule for general commercial users; and then a schedule for customers taking not less than 20,000 kilowatts. As a matter of fact, the Cleveland Railway Company is the only present customer falling within the last classification, and it is upon such differences in classification and the rates fixed in the respective sched - *222 ules that plaintiff in error bases its claim of discrimination.
It is shown that the Cleveland Railway Company is furnished service within the city, and within a relatively short transmission distance; that the service is wholly for railway purposes; and that its demand is constant, steady and not fluctuating, the demand being 20 to 25% of the Illuminating Company’s capacity. The further fact appears that such company is not a competitor of the plaintiff in error, of other companies falling within that classification, and that the Illuminating Company and the Cleveland Railway Company are not related companies — in fact are entirely independent.
It must be concluded from the record not only that the classification made in these schedules and approved by the commission is a proper classification, but that it is the only feasible classification. There is evidence that the return from the property devoted to the service within the schedule in question is considerably less than usually allowed in prescribing utility rates, and hence it does not appear, nor, aside from the claim of discrimination, is it urged that the rate charged is unreasonable. Under the facts disclosed it must be conceded that there should be a difference in the rate prescribed in the two schedules under consideration. Under the terms of the schedule applicable to large consumers the rate increased with the increase in the cost of coal. That was effected by a supplement to the schedule filed in 1917 and is still in force, but of course did not and does not apply to the plaintiff in error.
*223 The classification of consumers, as in the schedules presented, results in an increase directly in the rate charged plaintiff in error over that fixed in its contract of 1912, and the rate of the Cleveland Railway Company has been partially based upon the price of coal, and has been and will be increased proportionately to the increase of the price of coal above a certain figure therein stated.
Interurban companies, present and prospective, users of the service of the Illuminating Company, being properly classified together under the schedule covering the “Combined Electric Railway and Commercial Schedule, ’? and it appearing from the record that services to such companies would be un ■ der like circumstances substantially similar in character, quantity, demand and purpose, it is quite clear that if the plaintiff in error were charged a less rate than others of such companies, whether because of a previous contract relation, as contended, or for any other reason, it would be an instance of discrimination and preference such as falls within the inhibition of Sections 614-18 and 614-19, General Code.
It appearing that the classification made by such schedules and approved by the commission is upon a basis authorized by the statute and warranted by the record, its order is neither unreasonable nor unlawful, and therefore will not be disturbed.

Order affirmed.

Marshall, C. J., Hough, Wanamaker, Robinson, Jones and Clark, JJ., concur.