These are two suits brought by the executors of their respective decedents who, at the time of their respective deaths in 1932, were members and shareholders of the defendant building *Page 458 
and loan association. The suits are brought to enjoin the defendant from making payments without first paying complainants the amount of their claim, which are asserted to be preferential.
Defendant was organized in 1920. From then on, until 1933, which was after the deaths of decedents, the constitution of defendant by article 3, section 6, provided as follows:
"Article III, Section 6. Upon the death of any member of this Association who has not received a loan, the legal representatives of such deceased shareholders shall be entitled to receive from the Association the full amount paid in and all declared profits thereon, on due notice given, with legal interest until paid, first deducting all charges, fines and losses that may be chargeable on the shares held by such deceased member; or the membership may be continued by such legal representatives by the regular payment of dues. Should the shareholder have received a loan, his representatives may retain the same by continuing to pay monthly dues and interest until the shares shall terminate."
In 1933, the constitution was amended by repealing section 6 of article 3, thereby purporting to terminate the preferences given thereby and providing in substance that the estates of deceased members should receive payments only in accordance with the earnings of the association and funds available to make the payments.
Defendant for a time made certain payments to complainants on the theory that it was bound by section 6 of article 3, but subsequently discontinued payments thereunder and now asserts that this section is not binding upon it.
Complainants contend that section 6 constitutes a binding contract between the original shareholders and the defendant; that their rights became vested thereunder and that these rights cannot be taken away by the subsequent amendment of the constitution or otherwise. The merit of this contention is predicated upon the basis that section 6 was valid. The validity of this section depends upon the statute under which the defendant was organized and the construction to be given the statute. Any provision in the constitution or by-laws of defendant which contravenes the statute would not be valid. *Page 459 
There have been numerous cases setting forth the policy of the state in regard to building and loan associations and any construction of the statute must be made in light of that policy. In Bucsi v. Longworth, 119 N.J. Law 120, the court says:
"It is a matter of such common knowledge as to require judicial notice that the operation of building and loan associations in this state during the latter part of the last century had been so loose and utterly devoid of any consideration of the purpose for which they were created and the rights of the subscribing members that the situation was a public scandal and called for action on the part of our legislature. The legislature of 1903 undertook their regulation. P.L. 1903 p. 457. The need of regulation in the public interest was obvious and the statute was enacted for the protection of the public savings under the inherent police power of the state.
"An examination of the statute clearly evidences the intention of that legislature to strictly regulate the business of these associations and the statute contemplated throughout its provisions the central idea of co-operation, equality and mutuality upon the part of the members of the association.Fitzgerald v. State Mutual Building and Loan Association,76 N.J. Eq. 137, 143."
In Fitzgerald v. State Mutual Building and Loan Association,76 N.J. Eq. 137, the court states that the central idea of building and loan associations is that of co-operation, equality and mutuality and that each member is entitled to equal participation in the estate; that the statute does not contemplate that the privileges named shall be exercised to defeat equal participation and, the spirit of the statute being equal participation, the paramount equity is equal participation at all times. See, also, Moore v. Conover, 123 N.J. Eq. 61.
In the Bucsi Case, the court held that even a right of contract such as that given by a building and loan company statute was so affected by public interest that under the police power to regulate such institutions, such apparent rights must *Page 460 
yield to a change by statute. The court says, 119 N.J. Law (atp. 130):
"Assuming that the appellant has a vested right of contract, the obligations on contract must yield to a proper exercise of the police power of the state and vested rights cannot inhibit the proper exercise of the power."
The court further holds that private parties cannot by contract take away from the state the right under the exercise of the police power to regulate the subject-matter of the contract. The court says (at p. 132):
"The contract was congenitally affected with a public interest and the contract carries with it the infirmity of the subject-matter. Rights which are subject to state restriction cannot be removed from the power of the state (Union Dry GoodsCo. v. Georgia Public Service Corp., 248 U.S. 372;63 L.Ed. 309; 39 Sup. Ct. Rep. 117), by the contract of the parties, nor can one legislature inhibit this power of the state to regulate or abridge the use of such contract rights when such use is destructive of vital public interests."
In my opinion, section 6 relied upon by complainants is void as being in contravention of the provisions of the statute of 1903 under which defendant was organized. By this statute, section 6 thereof, building and loan associations could be organized and could adopt such constitutions only as should be "not inconsistent with this act or any law of this state." By sections 34, 38 and 39 withdrawals are permitted only on certain terms and conditions, and by section 53 it was provided that all shareholders shall occupy the same relative status as to debts and losses of the association.
Section 6 of article 3 of the constitution of defendant gave greater rights than those permitted by the statute and therefore this provision of the constitution was void. The repeal of this section in 1933 therefore took away no rights which complainants had, since it merely brought the defendant's constitution in accord with the provisions of the statute. Fornatara v.Atlantic Coast Building and Loan Association, 10 N.J. Mis. R.1248 (at p. 1256). Here the court says:
"From that time on, every purchaser of shares in a building *Page 461 
and loan association was given notice that he had a right of withdrawal and that the legislature had fixed the manner of payment and that while building and loan associations could make the same provisions by its by-laws, there was no power so to do if the provisions of the by-laws limited or attempted to transcend those of the legislative acts.
"The result was that when plaintiffs became shareholders they knew that the legislature had legislated as to withdrawals and that it had reserved the right and power to further legislate and that their rights with respect to withdrawals were derived from statute and not by way of contract arising out of by-law regulations."
In my opinion, section 6 of article 3 gave a preference which was in contravention of the provision of the statute that all shareholders shall occupy the same relative status as to debts and losses of the association and is void.
A decree will be advised dismissing the two bills of complaint. *Page 462