### SWAN v. PUBLIC UTILITIES COMMISSION OF KANSAS et al.

(District Court, D. Kansas, First Division. December 18, 1922.)

No. 437.

1. **Courts ☞347—General denial held insufficient denial of allegation that order of Public Utilities Commission was void for absence of findings.**

   In suit to enjoin enforcement of order of Public Utilities Commission of Kansas, general denial *held* not a sufficient denial of allegation in complaint that order was invalid, for absence of findings of fact under equity rule No. 30.

2. **Gas ☞14(1)—Rate order held void for want of findings.**

   Order of Kansas Public Utilities Commission fixing gas rate is void for failure to include findings as to valuation of property, reasonable rate

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of return, reasonable amount to be set aside for renewal and replacement reserve fund, reasonable amount for operating expenses, and to find that the prior rates "were unjust, unreasonable, unjustly discriminatory, or unduly preferential," as required by Sess. Laws, Kan. 1911, c. 238, §§ 13, 16.

3. Gas ⊚⟿14(1)—Rate held confiscatory.

Gas rate of 80 cents per 1,000 cubic feet, fixed by Public Utilities Commission of Kansas, *held* unreasonable and confiscatory.

In Equity. Suit by G. J. Swan, receiver of the Consumers' Light, Heat & Power Company, of Topeka, Kan., against the Public Utilities Commission of the State of Kansas and others. Decree for plaintiff.

Thos. F. Doran, of Topeka, Kan., for plaintiff.

A. E. Helm, of Topeka, Kan., for defendants.

BOOTH, District Judge. This cause has come on for final hearing upon the pleadings and proof. The suit is one for an injunction to restrain the Public Utilities Commission of Kansas from enforcing its order of July 1, 1921, which is as follows:

"Before the Public Utilities Commission for the State of Kansas.

"In the Matter of the Investigation into the Reasonableness of the Customer's Charge Included in the Schedule of Rates Filed by the Consumers' Light, Heat & Power Company, L. G. Treleaven, Receiver, for Gas at Topeka and Oakland, Kansas.

"Order.

"Now on this 1st day of July, 1921, the above-named case came on for final consideration and order of the commission.

"It appears that on the 11th day of April, 1921, this commission on its own initiative and motion instituted an investigation into the reasonableness of the service or consumer's charge of the said Consumers' Light, Heat & Power Company through its receiver; that later the said Consumers' Light, Heat & Power Company, through its receiver and counsel, appeared, and a full hearing was had on said question and all other matters in connection with reasonable rates and charges of said company for its service in the cities of Topeka and Oakland, Kan. The evidence of all the parties was received, the law presented by counsel, and the evidence and law reviewed and presented to the commission by counsel for the said Consumers' Light, Heat & Power Company, and the commission, having heard said evidence, listened to the argument of counsel, and having considered and weighed all of the evidence introduced by all of the parties present and participating in said hearing and investigation, finds that the rate of 80 cents per thousand cubic feet of gas furnished its customers in said cities, based on an annual leakage of 200,000 cubic feet per mile of three-inch equivalent, is a fair and compensatory rate for the service rendered by said company.

"And the commission further finds that no sufficient effort has been put forth by said company to maintain its distributing system in a reasonable condition as to leakage prior to this year, but that, on the other hand, the said company has always heretofore failed, neglected, and refused to provide against said leakage, even to the extent of the money provided by the United States court through the order of Judge Booth directing a larger proportion of the receipts for gas to said company for said purpose, but that said company has used said funds for other purposes, and said leakage has grown greater until recently, when the said company has inaugurated a campaign to reduce said leakage, but which leakage is still greatly in excess of the standard of 200,000 cubic feet fixed and determined as a reasonable standard by this commission.

"The commission further finds that the said 80 cents per thousand cubic feet, although compensatory for said gas delivered to its customers on the

⊚⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

basis of a leakage of 200,000 cubic feet of three-inch·equivalent, is not suffi- cient to provide funds to carry on a proper campaign to reduce the leakage to the standard fixed by this commission within a reasonable time.

"The commission further finds that a reasonable sum for carrying on this campaign to reduce the leakage by the receiver of the said Consumers' Light, Heat & Power Company, or by the company, should said receivership be dis- continued during the next 12 months, is $48,000.

"It is therefore by the commission ordered, and the said Consumers' Light, Heat & Power Company, by its receiver, is authorized to collect 80 cents per thousand cubic feet of gas metered to its customers as and for full com- pensation for said gas so delivered.

"It is by the commission further ordered that the said Consumers' Light, Heat & Power Company be and it is authorized to collect a service or custom- er's charge from each of its customers in the sum of 35 cents per month: Provided, however, that said service or customer's charge shall be placed in and accounted for as a separate item and account, and shall all be used by said Consumers' Light, Heat & Power Company through its receiver in his campaign to reduce the leakage of its distributing system to the fixed stand- ard of 200,000 cubic feet per mile of three-inch equivalent, and said funds shall be used for no other purpose; and provided, further, that the period for which such service or customer's charge may be collected is limited by this order to twelve months from the date hereof, and that\the commission retains jurisdiction hereof for any other and further orders necessary herein.

"By the Commission: It is so ordered."

The validity of this order is challenged on several grounds. It is urged that the order is void because of failure by the commission to make findings of fact as required by sections 13 and 16, chapter 238, Session Laws of 1911 of the state of Kansas.

[1] It might perhaps be contended that the commission did include findings of fact in its order above quoted, but I do not understand counsel for defendants to make such contention here. It seems to be conceded that the order contains merely conclusions of law and not findings of fact, properly speaking. That this is the position of counsel for defendants I gather from defendants' answer and from the brief submitted on their behalf. This ground of challenge was set up in the complaint, and the allegations of the complaint in this respect are not denied in the answer; the general denial in the answer not being suffi- cient for that purpose under the provisions of equity rule No. 30.

Further, in the brief submitted on behalf of the defendants it is not contended that the commission made findings of fact, but the position of the counsel is that no such findings were necessary. In support of this view he cites the case of Public Utilities Commission v. Wichita Railroad & Light Co. (C. C. A.) 268 Fed. 37. That case, however, has recently been reversed by the United States Supreme Court, in an opin- ion handed down November 13, 1922 (260 U. S. 48, 43 Sup. Ct. 51, 67 L. Ed. 124); the court holding that a finding of facts was necessary to the validity of the order of the commission. In the course of its opinion the court said:

"The proceeding we are considering is governed by section 13. That is the general section of the act comprehensively describing the duty of the com- mission, vesting it with power to fix and order substituted new rates for existing rates. The power is expressly made to depend on the condition that after full hearing and investigation the commission shall find existing rates to be unjust, unreasonable, unjustly discriminatory, or unduly preferential. We conclude that a valid order of the commission under the act must contain

a finding of fact after hearing and investigation, upon which the order is founded, and that for lack of such a finding the order in this case was void."

[2] Findings of fact as a basis for fixing a rate to be charged by a public utilities company, such as the plaintiff here, should include findings as to the valuation of the property used and useful in rendering the service to the public; also as to a reasonable rate of return to the utility company; also as to the reasonable amount to be set aside for a renewal and replacement reserve fund; also as to what is a reasonable amount for operating expenses. No such findings were made by the commission in the instant case. Furthermore, there is entire absence of a finding that the rates in effect prior to July 1, 1921, were "unjust, unreasonable, unjustly discriminatory, or unduly preferential"; yet this, by section 13, chapter 238, is a prerequisite to the fixing and ordering substituted a different rate. In my opinion, the so-called findings in the commission's order are not such findings of fact as are contemplated by the Kansas statute as construed by the Supreme Court. See, also, Utilities Commission v. Springfield Gas Co., 291 Ill. 209, 125 N. E. 891. For this reason alone the order of the commission must be held invalid.

Another ground of challenge is that the order is invalid, because the rates attempted to be fixed therein are unreasonable and confiscatory of plaintiff's property. The rate in force prior to the order was 80 cents per M cubic feet for gas used, plus a customer's meter charge of 75 cents per month. The order of the commission authorized 80 cents per M cubic feet for gas delivered. It also authorized a service charge of 35 cents to each customer per month, with the proviso that the latter charge should all be used by the company to reduce the leakage of the distributing system down to the fixed standard of 200 M cubic feet per mile of 3-inch equivalent, and that this fund should be used for no other purpose. That standard adopted by the commission has been held reasonable by this court.

In considering the claim that the rate fixed by the order is unreasonable and confiscatory, we may disregard the service charge with its proviso. That charge is for a specific, temporary purpose. We need not consider the propriety of the purpose, or the amount to be collected and devoted to it. For present purposes, we may assume that the standard of leakage has been attained, and take up for consideration the question whether the 80-cent rate based upon that assumed standard is unreasonable and confiscatory, because, if the 80-cent rate is unreasonable and confiscatory on the assumed standard of leakage, a fortiori it would be so before the standard was attained, unless the cost of maintaining the standard after it was attained was greater than the loss through leakage of gas prior to the attainment. But the evidence disproves this.

We turn, therefore, to examine the evidence as to the various elements necessary to be considered in determining whether the 80-cent rate is confiscatory on the assumed standard of leakage. At the time of the hearing eight months of 1921 had elapsed, and the figures submitted by the plaintiff company were based upon that period, viz. January 1 to August 31, 1921. On the assumed standard of leakage,

and at the price of 80 cents per M cubic feet for gas, the revenues from gas sold and minor miscellaneous sources, for the eight months ending August 31, 1921, was $284,000; expenses for the same period, including gas purchased, $268,500. Among the expense items were maintenance of mains, $16,317; maintenance of services, $20,960. These two items have been attacked as being too large, after the standard of leakage has been attained. There is evidence that, after the standard of leakage has been attained, $11,500, in ·round numbers, would be sufficient for the annual maintenance of mains and services, and there is evidence that $30,000 to $35,000 would be required. Using the figure $20,000, which appears reasonable, instead of the two above items, would make a difference as to those two items, for the eight-months period, in round numbers of $24,000, which would reduce the expenses for the eight-months period to $244,500. Subtracting this from the revenue would leave a balance of $39,500 for the eight-months period, or, in round numbers, $59,250 net earnings for a year.

The evidence as to the valuation of the plant varied from $1,322,784 to $2,565,894. It appears, however, that the Utilities Company has paid taxes for a number of years last past on an average valuation of $1,-332,605. Even taking this as the valuation, the net earnings above mentioned, $59,250, would amount to 4.4 per cent. The foregoing figures find ample support in the evidence, and are not in my judgment successfully assailed by the evidence on behalf of the commission.

[3] These figures demonstrate that the 80-cent rate, even on the assumed standard of leakage, is unreasonable and confiscatory. It follows that it must be so at present. For the foregoing reasons, and without considering the other grounds of challenge to the order of the commission, I reach the conclusion that the order is invalid, and that an injunction should issue restraining the enforcement thereof.

A decree may be prepared by counsel for plaintiff, and submitted to counsel for defendants as to form, before being submitted for signature.