EMIL PLACEK ET AL., APPELLANTS, v. M. D. EDSTROM, AS
COUNTY ATTORNEY OF SAUNDERS COUNTY, NEBRASKA,
APPELLEE.

37 N. W. 2d 203

Filed April 22, 1949.  No. 32588.

*Peterson & Devoe,* for appellants.

*James H. Anderson,* Attorney General, *Homer L. Kyle,*
and *M. D. Edstrom,* pro se, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiffs filed this action in the district court for Saunders County to obtain a declaratory judgment construing and applying Chapter 11, Laws of Nebraska, 1945, p. 110, now appearing as sections 8-163.01 and 8-163.02, R. S. Supp., 1947, commonly known as the "par-check law," but hereinafter designated as the act, contesting its constitutionality as applied to three types of banking transactions respectively pleaded in separate causes of action, and to enjoin threatened enforcement of the act by prosecution or otherwise, with relation to such transactions.

Defendant demurred generally to each cause of action, separately and severally. The trial court, after hearing thereon, sustained defendant's demurrer to the first and second causes of action, and overruled demurrer to the third. Each party in open court elected to stand upon their respective pleadings, and it was stipulated that the trial court should proceed to enter a decree adjudicating the issues raised thereby. Thereupon, a decree was entered, dismissing plaintiffs' first and second causes of action, adjudging that the act had no application to the transaction set forth in the third cause of action, and permanently enjoining defendant from prosecuting plaintiffs on account thereof. Therefrom, plaintiffs appealed and defendant cross-appealed. We affirm the judgment of the trial court.

Heretofore, in Placek v. Edstrom, 148 Neb. 79, 26 N. W. 2d 489, 174 A. L. R. 856, an action similar in its primary aspects with that at bar, this court not only construed the act involved, but also particularly designated the field of its application, and affirmatively adjudged its constitutionality. With reference to constitutionality, we concluded that the act was a fair and reasonable exercise of the police power of the state to

promote the public welfare with relation to banking, a business pre-eminently public in nature, and thus the act did not impair the obligation of contracts or unreasonably deprive these same plaintiffs or other state banks of their right to contract, or deprive them of due process or equal protection of the laws.

In that connection, our conclusions and the reasons therefor will not be generally repeated in this opinion, but included only by reference, because, as we view the matter, the sole question presented here is whether or not the act prohibits the banking transactions set forth in plaintiffs' three respective causes of action. We conclude that it prohibited the first and second but not the third.

Section 8-163.01, R. S. Supp., 1947, provides: "All checks drawn on any bank or trust company organized under the laws of this state shall be cleared at par by the bank or trust company on which they are drawn; Provided, the foregoing direction shall not be applicable where checks are sent to banks or trust companies as special collection items."

Section 8-163.02, R. S. Supp., 1947, provides: "Any officer or employee of any such bank or trust company who violates the provision of section 8-163.01 shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than five dollars nor more than ten dollars for each offense."

As disclosed by plaintiffs' petition, after the judgment in Placek v. Edstrom, *supra,* became final, plaintiff bank, by plaintiff Emil Placek, its president, mailed a notice to "All Correspondent Banks And Federal Reserve Bank" notifying them that on and after July 31, 1947, all checks drawn on it would be paid at par, only over the counter of its banking house in Prague, Nebraska, and that if a remittance by draft was requested, then their cash mail letters for collection and remittance should clearly indicate that plaintiff bank would be permitted and authorized to make a charge of 10 cents per $100 or fraction

thereof for issuing and remitting by draft, otherwise all items would be returned.

Enclosed with such notice was a letter stating in effect that, in conformity therewith, all checks drawn upon plaintiff bank would be paid at par only over its counter, and if such banks desired to save the expense of bringing such checks to its banking house for payment, it would be necessary that they mail plaintiff bank a letter permitting and authorizing it to make such exchange charges for issuing and mailing a draft to cover items sent to it.

Plaintiffs' first cause of action alleged substantially that such a notice and letter were mailed to its correspondent, First National Bank of Kansas City. On July 31, 1947, it replied that effective August 1, 1947, plaintiffs would be authorized to assess the aforesaid exchange charges, but that in keeping with the Federal Reserve Bank Regulation "Q" such charges "will be assessed to our endorsers should the accumulated totals amount to $2.00 and over for a current month."

Thereafter, upon several designated occasions, checks drawn on plaintiff bank by its depositors, were forwarded in cash mail letters by said correspondent for collection and remittance of their aggregate proceeds. Upon each such occasion, in conformity with its purported contractual authority, plaintiff bank remitted the aggregate amount of the checks contained in each such cash mail letter, less exchange charges upon the total amount thereof, as aforesaid, by draft drawn on a correspondent bank.

For its second cause of action, plaintiffs alleged substantially that it mailed a like letter and notice to its correspondent, First National Bank of Omaha. On July 28, 1947, it replied, acknowledging receipt of the notice that such exchange charges would be made effective August 1, 1947, but stating that "When depositors instruct that items be sent you as 'special collection', any charge for remitting will be charged to the endorser."

Thereafter, upon several designated occasions, checks drawn on plaintiff bank by its depositors were forwarded in cash mail letters by said correspondent for collection and remittance of their aggregate proceeds. Each such cash mail letter contained a slip listing the checks enclosed, and at the bottom of the slip appeared the words "Special Collection." Upon each such occasion, in conformity with its purported contractual authority, plaintiff bank remitted the aggregate amount of the checks contained in each such cash mail letter, less exchange charges upon the total amount thereof, as aforesaid, by draft drawn on a correspondent bank.

For their third cause of action plaintiffs alleged substantially that by letter dated August 14, 1947, Omaha Provision Company, as payee of two described checks aggregating $110.46, drawn on plaintiff bank by two of its depositors, wrote plaintiff bank, "Will you please issue a draft drawn on First National Bank, Omaha to cover enclosed checks." Pursuant thereto, plaintiff issued and mailed a draft for the total amount of the two checks less a charge of 20 cents for issuance of the draft, postage, and other expenses in connection therewith.

Under date of August 14, 1947, plaintiffs notified defendant of the aforesaid banking transactions and practices, requesting his consideration concerning validity thereof, contending that they were not a violation of the act, and permissible under the holding in Placek v. Edstrom, *supra*. On August 20, 1947, defendant replied, assuming a contrary view in conformity with an opinion of the Attorney General, dated July 30, 1947, and informing plaintiffs that he would, in response to official duty, take such appropriate steps as were necessary to enforce the law. Plaintiffs thereafter filed the case at bar.

For the purpose of brevity and clarity, we will dispose of the respective causes of action inversely.

With reference to the third cause of action involved in defendant's cross-appeal, it was said in Placek v. Edstrom, *supra:* "Before checks came into such general usage,

banks naturally collected legitimate exchange charges from their customers or depositors for making their funds available, by one recognized mode or another, at a distant place where the customers wished to use them in making a purchase or paying a debt, and they are not now prohibited by the act or by any other law from doing so with profit to themselves. * * * there is nothing in the act which prevents the bank from charging its customer or depositor for such services rendered to him for his benefit. Therefore, the act does not compel such a bank to donate the use of its services or property without compensation. It is not thereby, or by any law related thereto, as will be hereinafter observed, compelled to do anything without compensation. Such banks are simply told that if they do clear checks, it must be done at par without deduction of a so-called exchange charge from remittances to forwarding banks."

In speaking of the act, it was also said in Placek v. Edstrom, *supra:* "The requirement is not that all checks shall be paid at par, nor that they shall be collected at par. It is the manner in which all checks must be cleared by all state banks, and not that they must be paid or collected at all events, that is prescribed by the act. It is par clearance which is required."

Beyond question, the Omaha Provision Company had a right to present the checks of which it was the payee or holder at the counter of plaintiff bank, and assuming their validity, demand and receive payment in full therefor if there was sufficient money on deposit to pay the same, or it had a right, over plaintiffs' counter, to request the issuance of a draft on a specific bank for the proceeds of the checks, the equivalent of cash, less the regular charge for issuance of a draft. In such a situation, plaintiff bank would in fact be rendering services to its own customer for his benefit and would be entitled to make a legitimate charge therefor.

The act never intended to prohibit the payee or holder from doing the same directly by mail. It was in effect

the same transaction as presenting the checks in person over plaintiffs' counter and requesting issuance of a draft for the proceeds thereof. Such a transaction would not in any sense be a bank clearance between a forwarding bank and a drawee bank, within the purview of the act. The purpose of the act was to uniformly and economically facilitate the availability of money or credit by the use of checks in other places, and make uniform all bank clearance transactions in connection therewith, by requiring drawee state banks to make all remittances to forwarding banks upon cash mail letters in full without any deduction therefrom of arbitrary so-called exchange charges which were customarily charged back by the forwarding bank to the payee or holder, who not only lived in but transacted his business in another city as a depositor or customer of the forwarding bank, but was neither a depositor nor customer of the drawee bank.

We conclude that plaintiffs' third cause of action was a transaction completely outside the realm of the act, as construed in Placek v. Edstrom, *supra.*

Plaintiffs argued that the transactions set forth in their second cause of action were "special collection items." We cannot so hold.

It will be noted that section 8-163.01, R. S. Supp., 1947, contains a proviso that the direction to clear checks at par "shall not be applicable where checks are sent to banks * * * as special collection items." The words "special collection items," undefined therein, must be understood and applied, of course, in their ordinary and nontechnical sense.

"Special" is defined by Webster's New International Dictionary, (2d ed.), Unabridged, as: "Distinguished by some unusual quality; uncommon; noteworthy; extraordinary; * * *. Relating to a single thing or class of things; having an individual character or trait; particular; peculiar; unique. * * * opposed to general," as distinguished from "ordinary, usual, exceptional; typical." "Collection" is therein defined as the "Act or process of

collecting," or, "That which is obtained in payment of demands." The word "items," of course, simply has reference to the articles to be collected.

By analogy, "special collection items" are those which are sent to a bank for collection only, and which in fact actually require the employment of unusual and individual treatment or services in the act or process of collection and remittance thereof, as distinguished from those which require only the treatment or services ordinarily involved or employed in the general course of clearance transactions between a forwarding bank and the drawee bank.

For aught that appears, the checks involved in the second cause of action were drawn on plaintiff bank by its own depositors having ample funds on deposit with which to pay them. The transactions were handled in exactly the same manner as they would have been handled had the words "special collection" never appeared on the forwarding slip. It was simply a clearance transaction between the forwarding bank and the drawee bank which charged the checks to the accounts of its depositors and paid itself as agent for the holder or forwarding bank, and thereafter held such funds in a fiduciary capacity as such agent exactly as it would in the usual course of bank clearance transactions.

In other words, the checks were in fact cleared in the regular course, and merely placing the words "Special Collection" on the forwarding slip in cash mail letters, as instructed by the depositor or otherwise, could not and did not in the slightest change the factual nature or character of the transactions, but simply, by purported contractual arrangement, violated the act. To hold otherwise would give the law no force or effect and permit its avoidance by indirection.

With regard to the first and also the second causes of action, it was evidently plaintiffs' theory that by obtaining express contractual authority from forwarding banks to make the so-called exchange charges, it would

take the transactions outside the purview of the act and that otherwise the act would be unconstitutional as repugnant to due process. We cannot so hold.

In Placek v. Edstrom, *supra,* that identical question was raised by plaintiffs and disposed of contrary to their contentions. Our reasoning and conclusions in that connection were therein supported by numerous cited texts, state and federal authorities, which will not be repeated here.

Before the enactment of the par-check law, the so-called exchange charges were of necessity, in order to have any semblance of legality, deducted by drawee banks from remittances to forwarding banks in clearance transactions, by virtue of either express or implied contractual authority. It was that purported authority which the act sought to legislatively restrain in the interest of the public welfare. Checks are cleared at par only "when the proceeds received therefrom by the drawee bank are properly remitted in full to the forwarding bank as required by Chapter 11, Session Laws of Nebraska, 1945." Placek v. Edstrom, *supra.*

In that regard, the act is mandatory. The violation thereof is a misdemeanor, and any failure or refusal of a state bank to clear checks at par is just as much a violation of the law, whether it be done under an implied or express contract, as it would be under no contract at all.

It is elementary that "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them." Hudson Water Co. v. McCarter, 209 U. S. 349, 28 S. Ct. 529, 52 L. Ed. 828.

As stated in Union Dry Goods Co. v. Georgia Public Service Corp., 248 U. S. 372, 39 S. Ct. 117, 63 L. Ed. 309, 9 A. L. R. 1420: "That private contract rights must yield to the public welfare, where the latter is appropriately declared and defined and the two conflict, has been often decided by this court." See, also, Lincoln

Federal Labor Union v. Northwestern Iron and Metal Co., 149 Neb. 507, 31 N. W. 2d 477, affirmed on appeal by the Supreme Court of the United States in 335 U. S. 525, 69 S. Ct. 251, 93 L. Ed. 201.

In other words, we conclude that plaintiffs and other state banks must obey the mandates of Chapter 11, Laws of Nebraska, 1945, duly enacted to promote the public welfare, and it follows that they could not and cannot, by contract or otherwise, avoid observance or make ineffectual the police power of the state, thus fairly and reasonably exercised in accord with constitutional methods.

The judgment of the trial court should be and hereby is affirmed.

AFFIRMED.