MITCHELL B. PERKINS et al.

*v.*

PUBLIC SERVICE RAILWAY COMPANY et al.

[Decided December 4th, 1916.]

1. A contract by a railroad company to carry the complainants for life over its railroad, in consideration of a grant of land for a right of way, violates the Utilities act of 1911, and will not be specifically enforced.

2. After foreclosure and sale of the real estate of a railroad, such an agreement is not binding upon the new owner of the land.

———

On bill, &c.

*Mr. Linton Salterthwaite* and *Mr. Norman Grey,* for the complainants.

*Mr. Frank Bergen* and *Mr. E. Ambler Armstrong,* for the defendants.

BACKES, V. C.

The object of this bill is to compel the Public Service Railway Company to carry the complainants over its railroad between Trenton and Riverton for life, free of charge, in compliance with a contract to that effect made by the lessor of the railway company, in consideration of grants of land for the route of the railroad. The history of the case, as shown by the pleadings and as represented by counsel in their oral and written arguments, is briefly this: In 1900, the complainant Mitchell B. Perkins and his associates promoted the Camden and Trenton Railway Company and built and operated its line of railway between Camden and Trenton. The route extended across lands of Perkins, in Beverly township, Burlington county, for which he gave a right of way in consideration of the company agreeing to carry him and the members of his family over the line for life. The agree-

ment was reduced to writing and passes were issued and honored until the company became bankrupt, when its property and franchises were sold under a mortgage foreclosure in 1910. The purchaser conveyed to a newly-formed company, which company leased to the Riverside Traction Company. The traction company operated the road until 1912, when it leased the line to the Public Service Railway Company for a term of nine hundred and ninety-nine years. The traction company declined to recognize the passes, whereupon the complainants filed their bill in this court to specifically enforce the contract made with the Camden company. A compromise was effected, resulting in an agreement, which the present bill seeks to enforce, dated December 30th, 1911, wherein Perkins agreed to discontinue the suit and to execute to the traction company a deed for the right of way across his land which it was then using and enjoying, and also to grant an additional right of way adjoining, eight feet in width and some one thousand two hundred feet in length, in consideration of a pass to be issued to Edna Perkins, who had then recently come into the family. On its part the traction company agreed to honor the passes for rights of transportation issued by the Camden and Trenton Railway Company to Perkins, his wife and his five children, and to endorse thereon the words "This pass will be honored by Riverside Traction Company between Riverton and Trenton;" and to issue Edna Perkins a pass or ticket evidencing her right to transportation for life over the lines of the company from Trenton to Riverside. It was also stipulated that the passes were granted only in so far as the traction company had the legal right to do so, and further, that the grants of rights of way were upon condition that in case the complainants should be deprived of the rights of transportation the grants should immediately cease and be void, and the grantor should have the right to resume possession of the premises within sixty days. The agreement bound the successors and assigns of the traction company. The Public Service Railway Company honored the passes until March 5th, 1913, when it refused further free transportation on the ground that such transportation was in violation of the Utilities act of April 21st, 1911. *P. L. 1911 p. 374.* Counsel for the public service frankly

stated in open court that the company was ready and willing to perform the contract of its lessor, the traction company, if it were lawful to do so; and in his argument defended the action of his client squarely on the ground that the contract which was made after the Utilities act went into effect was in violation of that statute. Such contracts have not been regarded as infringing the principles of the common law relating to common carriers, and have been upheld by the courts. *Curry* v. *Railway Company, 58 Kan. 6; Grimes* v. *Minn., Lyndale and Minn. Railway Co., 37 Minn. 66; Erie and Pittsburgh Railroad* v. *Douthet, 88 Pa. 243; Oklahoma City* v. *Oklahoma Railway Co., 93 Pac. Rep. 48; Dempsey* v. *New York Central and Hudson River Railroad Co., 146 N. Y. 290; Mottley* v. *Louisville and N. R. Co., 150 Fed. Rep. 406; reversed, 211 U. S. 149,* for want of jurisdiction; *Public Service Electric Co.* v. *Board of Public Utility Commissioners et al., 93 Atl. Rep. 707.*

These principles of the common law applicable to common carriers demanded nothing more than that the carrier should provide, reasonably, adequate facilities for all who applied for transportation in the order of application, and that the charges therefor should be reasonable. So long as the charges were reasonable, the passenger had no cause for complaint, even though others were carried at a lesser rate or free. The relative rights of the individual were apparently not considered, and, correspondingly, a carrier who bartered his transportation for land or other considerations obviously could not be tolerated to escape the performance on the grounds of failure of a public duty to charge all reasonably equal. To remedy the evil incursions upon the public's right to travel for a compensation equitable to all—to level the obligations and rights of common carriers in their relation to the public—the state intervened by the Utilities act. Section 18 of the statute provides that "no public utility as herein defined shall (a) make, impose or exact any unjust or unreasonable, unjustly discriminatory or unduly preferential * * * rate," &c.; or (d) "make or give, directly or indirectly, any undue or unreasonable preference or advantage to any person or corporation, or to any locality." Later sections make it a misdemeanor for any public utilities corporation or any

other persons to violate the provisions of the act, either by acts. of commission or of omission. The defendants are apprehensive that the contract sought to be enforced violates the subdivisions of section 18, as quoted, and it will be noted that doubt existed in the minds of the contracting parties at the time it was made, because it is therein stipulated that the passes were granted only in so far as the traction company had the legal right to do so.

It is true that the limitations in the act are concise declarations of common law principles, but the contention of the complainants that they have no wider significance or effect than they had at common law, is not admissible. It must be a matter of common observation that the legislature in defining these principles in an act in which the government assumed the regulation of the public agencies of the state, and in this the delegation of power to the utility commission to command an equality of facilities and accommodations and adjust and fix rates equitable to the great body of the traveling public and the imposition of severe penalties for violation, emphasized a policy unrecognized at common law. Then they meant that the charge must be reasonable to the individual passenger and now they signify that they must be reasonable and also not unreasonable or preferential, taking into consideration the rights, as to charge, of all patrons collectively.

Our Utilities act is not in phraseology as precise and exacting as the Federal Interstate Commerce act, which prohibits the carrying of persons or property for fare "greater or less or different," but its purpose and spirit of equality is not dissimilar and in principle forbids any difference in charge which is not based upon difference in service, and viewed in this light the contract under consideration, which grants to the complainants the privilege of riding over the line of the defendant an indefinite time and unlimited mileage for a fixed consideration, viz., the value of the land, is manifestly an unreasonable preference and advantage, and within the inhibition of the Public Utilities act. It was contended by the complainants that because there was no proof in the case showing that the value of the land was not equal to the services to be rendered, it could not be held that the preference and advantage were "undue or unreasonable."

It seems to me that the contract itself demonstrates this. A simple illustration will suffice: Suppose Perkins had bargained with the defendant to carry him and his family *ad libitum* over its route for life for $1,000. Could such a contract be successfully defended in the face of the statute, and that is really what we have here. To sustain the contract would open the doors wide to the very evils the statute was intended to suppress and make impossible the execution of the functions of the utilities commission to regulate and fix rates. The commission and the public would again be at the mercy of unscrupulous corporations and a restoration of old-time methods could be looked for when, for services or property or political pull, unrestricted transportation was given.

The contract made in 1900 by the complainants with the Camden and Trenton Railway Company plays no part in this litigation, save as a matter of history, and because it may have formed a part of the consideration for the contract of 1911. The complainants lost all right under the earlier contract when the Camden and Trenton Railway Company was sold out under foreclosure proceedings in 1910. The bill is not maintainable upon the theory that the contract relates to a time anterior to the enactment of the public utilities statute, which was declared in *Public Service Electric Co.* v. *Board of Public Utilities Commissioners, supra,* to be prospective.

The bill will be dismissed, with costs.