The primary and controlling inquiry herein is whether the averments of the bill of complaint are adequate to sustain the relief sought by complainants. The relief sought is a decree compelling defendant to issue to complainants what is commonly known as free passes over its line of railway between Camden and Atlantic City.
Complainants' bill is based upon, and seeks a decree for specific performance of, a written contract made by Philadelphia and Atlantic City Railway Company, a predecessor in title of defendant company, wherein, in part consideration for the conveyance of a certain right of way, that predecessor corporation agreed to issue annually the eleven passes now *Page 354 
sought, during the period of occupancy of the land so conveyed. The bill alleges that the right of way which was conveyed is still in use by defendant company.
In Perkins v. Public Service Railway Corp., 87 N.J. Eq. 134,
this court (Vice-Chancellor Backes) determined that a contract of the nature of the one here in question is not only forbidden by our Utilities act of April 21st, 1911 (P.L. 1911 p.374), but that its performance renders the parties guilty of a misdemeanor. It is there held that the Utilities act declares and enforces a public policy of this state — which policy was unrecognized at common law — to secure the public against the evil of preference or advantage being extended by a public utility corporation to any person, corporation or locality, and in consequence renders it unlawful for a public utility corporation to barter its transportation or service for land. That decision must be here regarded as conclusive as to contracts of that nature made since the enactment of our Utilities act.
The present case in all essential respects is the same as the case of Perkins v. Public Service Railway Corp., supra, except in that the contract here sought to be enforced was made prior to the enactment of the Public Utilities act. This court is accordingly asked, in the exercise of its extraordinary jurisdiction of specific performance of contracts, by its decree to compel defendant to perform an act which now is not only contrary to the policy of our laws, but is illegal and the performance of which may subject defendants to criminal liability. The general rule is that in administering the extraordinary equitable remedy of specific performance, private contractual rights must give way to public needs and like considerations leading to hardships of the defendants or others. See Pom. Spec. Perf. (3d ed.) §§ 181a, 280; Public ServiceElectric Co. v. Board of Public Utility Commissioners,87 N.J. Law 128 (at p. 13); same case on review, 88 N.J. Eq. 603.
But independently of limitations peculiarly incident to the remedy of specific performance, it is established by a long line of well-recognized authorities, both state and federal, that contracts with public utility corporations *Page 355 
are always subject to reserved authority in the state, under the police power or express statute, to control rates and regulate management of such utilities in the interest of the public welfare. Further than that it is unnecessary to presently inquire, although the authorities appear to adequately support the view that all private contracts are subject to such implied reservations, the latter view being expressed in the general formula that in every private contract there is always a reservation to be implied for the performance of a public duty in which the interests of the state are materially involved. InAtkinson v. Ritchie, 10 East 531 — a suit for damages for breach of a charter party — Chief Justice Lord Ellenborough, at page 534, says: "That no contract can properly be carried into effect, which was originally made contrary to the provisions of the law; or which, being made consistently with the rules of law at the time, has become illegal in virtue of some subsequent law, are propositions which admit of no doubt. Neither can it be questioned, that, if from a change in the political relations and circumstances of this country, with reference to any other contracts which were fairly and lawfully made at the time, they have become incapable of being any longer carried into effect, without derogating from the clear public duty which a British subject owes to his sovereign and the state of which he is a member; the non-performance of a contract in a state so circumstanced is not only excusable, but a matter of peremptory duty and obligation on the part of the subject." In Barker v.Hodgson, 3 M. S. 267 (at p. 270), and also in Esposito v.Bowden, 4 El. B. 963 (at p. 976), the same general views are declared. See, also, to like effect the opinion of Mr. Justice Cooley in Cordes v. Miller, 39 Mich. 581.
But confining the present inquiry to contracts made with public utility corporations, the rules already stated will be found to have been sanctioned too frequently to justify specific citation of the many cases. The cases are collected in an annotation toUnion Dry Goods Co. v. Georgia Public Service Commission,248 U.S. 372, found in 9 A.L.R. beginning at p. 1423, under the caption: "Power of a state *Page 356 
to change private contract rates for public utilities." That annotation is supplemented in 11 A.L.R. beginning at p. 460.
In the federal case there annotated, as well as in the numerous cases cited in the annotations, it is specifically determined that such contracts must be understood as made in reference to the possible exercise of the rightful authority of the government and no obligation of such a contract can extend to the defeat of legitimate governmental authority, and that rates prescribed by a state in the exercise of its police power are not repugnant to the contract or due process of law clauses of the federal constitution merely because, if given effect, they will supersede the rates designated in private contracts between the utility and its customer, entered into at a prior time; that private contract rights must yield to the public welfare where the latter is appropriately declared and defined and the two conflict. Only a few of the numerous cases dealing with this subject will be here specifically cited: Louisville and Nashville Railroad Co. v.Mottley, 119 U.S. 467; Mill Creek Coal and Coke Co. v. PublicService Commission, 84 W. Va. 662; 100 S.E. Rep. 557; Schaper v.Cleveland and Erie Railway Co., 265 Pa. 109; Erie Railroad Co.
v. Board of Public Utility Commissioners, 89 N.J. Law 57;affirmed, 90 N.J. Law 673, in which case the principle is specifically declared (page 88) to the effect that a contract which a utility corporation is empowered by the state to enter into is made subject to the future exercise by the state of its police power, and hence the obligation of such contract is not in a constitutional sense impaired by such future legislation.Edison Storage Battery Co. v. Board of Public UtilityCommissioners, 93 N.J. Law 301; Lehigh Valley Railroad Co. v.United Lead Co., 102 N.J. Law 545 (at p. 549); Bayonne v.Passaic Consolidated Water Co., 98 N.J. Eq. 174 (at p. 178,179). It necessarily follows that the contract here in controversy must give way to the provisions of our Utility act, as the provisions of that act touching preferential rates has been construed by this court in Perkins v. Public ServiceRailway Co., supra.
The motion to dismiss the bill must be sustained. *Page 357