84 N.J. Super. 197 (1964)
201 A.2d 398
CURTISS-WRIGHT CORPORATION, A DELAWARE CORPORATION, PLAINTIFF,
v.
PASSAIC VALLEY WATER COMMISSION, A PUBLIC CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided June 5, 1964.
*200 Mr. Alfred J. Kovell, attorney for plaintiff.
Mr. Benjamin J. Spitz, attorney for defendant (Mr. Newton M. Roemer, of counsel).
PASHMAN, J.S.C.
These are cross-motions for summary judgment by the parties on the first count of the complaint.
The action is for injunctive relief and damages based upon an allegation that water rates charged to plaintiff by defendant since July 1960 are in excess of the rates embodied in a 1942 contract and supplemental agreement entered into between defendant and plaintiff's predecessor, The Defense Plant Corporation. Defendant is a body politic created by R.S. 40:62-108 et seq. since it is owned by two or more municipalities. The owner cities are Passaic, Clifton and Paterson. A similar statutory scheme is provided in R.S. 40:62-47 et seq. whereby a single municipality may operate a public water supply. The original agreement between the parties provided that plaintiff's predecessor would bear the entire cost of acquiring a necessary right of way and constructing a 24-inch pipeline to its manufacturing plant from *201 defendant's existing 34-inch main in Garfield. Defendant constructed the pipeline and was paid $40,000 by plaintiff's predecessor. Title to the pipeline was vested in defendant together with the right to serve other customers from it. Plaintiff's affidavits allege that The Hackensack Water Co. and the Immaculate Conception Convent are presently being served by the pipeline.
The supplemental agreement provided as follows:
"WHEREAS, it is provided in Section 127 of the said Statute as follows:

40:62-127. Water Rates and Regulations

Such commission may prescribe and change from time to time rates to be charged for water supplied by the waterworks so acquired, and by any extension or enlargement thereof, but rates for the same kind or class of service shall be uniform in all municipalities supplied by the waterworks. As soon as practicable after acquiring the waterworks rates shall be prescribed, and shall be revised from time to time whenever necessary, so that the waterworks shall be self-supporting, the earnings to be sufficient to provide for all expenses of operation and maintenance and such charges as interest, sinking fund and amortization, so as to prevent any deficit to be paid by taxation from accruing. 
WHEREAS, the Corporation is desirous of having this agreement executed by the Commission to supply water not only to Wright Aeronautical Corporation but also to any subsequent owner or operator of said plant at Wood-Ridge, New Jersey, at rates fixed by the Commission in accordance with the said Statute.
NOW THEREFORE, this agreement witnesseth, that the said Commission in consideration of the premises, agrees that it will supply water not only to Wright Aeronautical Corporation, but also to any subsequent owner or operator of the plant at the above location at its published scale of rates for industrial consumers as may be fixed from time to time by the Commission in accordance with the provisions of the Statute above quoted."
Under N.J.S.A. 40:62-127, as it then existed, defendant had only two classes of rates, retail and wholesale, regardless of the location of the customer. For 18 years plaintiff was charged the same rates as the rates charged to other industrial customers, including those in Passaic, Clifton and Paterson. The rates were increased from time to time and plaintiff paid the increases.
*202 On March 14, 1960 a bill was introduced in the New Jersey Assembly which was enacted into law as chapter 172 of the Laws of 1960 and became effective on January 5, 1961 as an amendment to N.J.S.A. 40:62-127. It authorized defendant to set different rates for customers located outside the owning municipalities from those within the owning municipalities. As amended, this section of the statute reads in pertinent part as follows:
"Such commission may prescribe and change from time to time rates to be charged for water supplied by the waterworks so acquired, and by any extension or enlargement thereof, but rates for the same kind or class of service shall be uniform in all the municipalities supplied by the waterworks. The supplying of water to locations beyond the boundaries of the municipalities owning the waterworks shall be basis for separate classification of service to permit reasonable differentiation of rates. As soon as practicable after acquiring the waterworks rates shall be prescribed, and shall be revised from time to time whenever necessary, so that the waterworks shall be self-supporting, the earnings to be sufficient to provide for all expenses of operation and maintenance and such charges as interest, sinking fund and amortization, so as to prevent any deficit to be paid by taxation from accruing. * * *" (Emphasis added)
Effective July 1, 1960 defendant "split" its retail rate schedule (at the same time increasing the rates) into a "three cities" and an "outside" class, thereby creating two different classes of industrial consumers, i.e., insiders and outsiders.
In July 1960 defendant began charging plaintiff a higher rate than other industrial consumers in Passaic, Paterson and Clifton. Plaintiff has paid these rates under protest.
Plaintiff alleges that the amendment is prospective only and may not be interpreted to deprive it of the rate stipulated in the 1942 contract. Plaintiff also relies upon R.S. 40:62-139, which was in effect in 1942 and remains unaltered to date. That statute provides:
"The commission may enter into a contract with any person to supply such person with water for fire protection, manufacturing and irrigation and other special purposes, at rates and upon conditions to be designated by the commissioner. Thereupon such person shall pay *203 to the commission the rate and all other charges stipulated therein, instead of the usual rates charged to other customers of the commission."
By affidavit plaintiff calculates the difference between the rate charged to it and "inside" industrial users based on plaintiff's use of water (for the period July 1, 1960 to March 31, 1964) to be $69,152.08. The percentage difference has varied between 22% and 33%.
In the second count plaintiff alleges that even if defendant is allowed to charge plaintiff a higher rate than industrial users in the three owner cities, the present rate is unreasonable and discriminatory.
Defendant admits the execution of the contracts referred to in the complaint and contends that the supply of water which it has furnished to plaintiff has been in accordance with the provisions of said contracts. Defendant also admits that plaintiff's manufacturing plant is located "beyond the boundaries of the municipalities owning the water works." However, defendant denies that plaintiff has been deprived of its property without due process of law and also denies that any of its actions have deprived or will deprive plaintiff of any of the benefits under the aforesaid contracts. Defendant claims that (1) plaintiff has an adequate remedy at law; (2) plaintiff has sustained no legal damage, and (3) the complaint fails to state a claim upon which relief can be granted.
The water commission also argues (1) that the amendment to N.J.S.A. 40:62-127, effective January 5, 1961, was a valid exercise of legislative power, and (2) the rates which it charged plaintiff were in accordance with the applicable statute, as amended, which provides for a reasonable differentiation of rates for supplying water to locations such as plaintiff's, since it is beyond the boundaries of the municipalities owning the water works.
The starting point on any motion for summary judgment is, of course, the express language of our rule, R.R. 4:58-3:
*204 "The judgment or order sought shall be rendered forthwith if the pleadings, depositions and admissions on file together with the affidavits, if any, show palpably that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."
The movant has the burden of excluding any reasonable doubts, and all inferences which emanate from such doubts are to be resolved in favor of the opponent of the motion. United Advertising Corp. v. Borough of Metuchen, 35 N.J. 193 (1961); Frank Rizzo, Inc. v. Alatsas, 27 N.J. 400 (1958). The following language from Bouley v. Borough of Bradley Beach, 42 N.J. Super. 159, 168 (App. Div. 1956), succinctly sums up this aspect of summary procedure:
"All inferences of doubt are drawn against the movant in favor of the party opposing the motion; the papers supporting the motion are closely scrutinized and the opposing papers indulgently treated. * * * A motion for summary judgment should be granted only with much caution. * * * Such a motion should not be used for a trial of disputed facts upon affidavits."
See also Finnegan v. Penna. R.R. Co., 76 N.J. Super. 71, 76-77 (Law Div. 1962).
On the other hand, it must also be recognized that the express language of our rule does provide a salutary course of action. It provides an expeditious procedure for disposing of groundless claims and frivolous defenses, thereby preserving judicial manpower and providing facilities for the hearing of those matters which meritoriously command attention. Robbins v. Jersey City, 23 N.J. 229 (1957).
R.R. 4:58-3 is designed to provide a prompt, businesslike, inexpensive method of disposing of any cause in which a discriminatory search of merits in the pleadings, depositions and admissions on file, together with any affidavits submitted on the motion, clearly discloses the absence of a genuine issue of material fact requiring a plenary disposition. Devlin v. Surgent, 18 N.J. 148 (1955).
At the outset it should be noted that although this action should more properly have been brought as an action *205 in lieu of prerogative writs in the Law Division, plaintiff has asked for injunctive relief and the court will hear the matter. The essential facts are undisputed and have been outlined by the court. The questions raised by the first count of the complaint are purely legal and can properly be disposed of on a motion for summary judgment. The questions before the court involve the interpretation of the 1942 contract in light of what the parties then intended as well as various questions of statutory interpretation and constitutional law.
The law is clear that a reasonable differentiation of rates among users of a public utility in different situations is not discriminatory. Yardville Estates, Inc. v. City of Trenton, 66 N.J. Super. 51, 57 (App. Div. 1961); 12 McQuillin, Municipal Corporations (3d ed. 1950), §§ 34.99 to 34.105. Numerous cases also enunciate the general rule that private contractual rights must yield to the public welfare where the latter is appropriately declared and defined and the two conflict. The fact that the interdiction of statutes impairs the obligation of contracts does not prevent the State from exercising its power for the general good of the public, even though contracts entered into between the individuals may thereby be affected. See Union Dry Goods v. Georgia Public Service Comm., 248 U.S. 372, 39 S.Ct. 117, 63 L.Ed. 309 (1919); Schmoele v. Atlantic City Railroad Co., 108 N.J. Eq. 353 (Ch. 1931), affirmed 110 N.J. Eq. 597 (E. & A. 1932); Bayonne v. Passaic Consolidated Water Co., 98 N.J. Eq. 174 (Ch. 1925). In all of these cases private contracts for the granting of utility service were held subject to state rate regulation.
Plaintiff does not quarrel with the above rules or the cases. It argues that the situation here is distinguishable because N.J.S.A. 40:62-127 is prospective and because of R.S. 40:62-139 (heretofore quoted) specifically allows a jointly owned municipal water commission to enter into contracts with private persons. There is an analogous statute in the sections allowing single-owner municipalities to enter into contracts with persons outside the owner municipality. R.S. *206 40:62-87. R.S. 40:62-87 has been construed in the case of Federal Shipbuilding and Drydock Co. v. City of Bayonne, 102 N.J. Eq. 475 (Ch. 1928). affirmed o.b. 104 N.J. Eq. 196 (E. & A. 1929). In that case Bayonne possessed the same rate-making authority under a statute relating to single-owner municipalities, R.S. 40:62-47 et seq. as defendant does under the multiple owner statute, R.S. 40:62-108 et seq. Compare R.S. 40:62-87 with R.S. 40:62-139. Bayonne was selling water to "outside" consumers in the Kearny meadows, including plaintiff Federal Shipbuilding and Drydock Company. The municipality desired to enlarge a portion of its mains located on lands owned by Federal, and a contract was negotiated. Under it Federal made a substantial advance payment on account of water to be supplied in the future in order to make funds available for the work. In consideration thereof Bayonne agreed to furnish water to Federal at the same rates as it did "to consumers of an equal quantity." Thereafter the amount which Bayonne was paying the East Jersey Water Company for its water was increased. Bayonne then passed a resolution raising Federal's rates above the rates being charged to industrial consumers in Bayonne making Federal subject to the same rates which it was charging other industrial consumers in Kearny. The court held the resolution void as an attempt to increase Federal's contract rate retroactively and hence destroy rights vested in Federal by a contract which was entered into pursuant to R.S. 40:62-87. It also rejected the contention that such a contract is subject to a reserved power to revise the rate. The court said:
"* * * It is natural to suppose that the company expected to receive in return the same favorable terms as might be granted any other large consumers; and, on the contrary, it is impossible to believe that the company, when it advanced so large a sum of money, contemplated that it should pay for water any price that any other large consumer on the Kearny Meadows  who had contributed nothing  was charged, although other equally large consumers in Bayonne were charged a lower rate. I do not believe either party to the contract ever intended any such thing.
*207 The resolution of Bayonne attempting to retroactively increase the rate to be paid by the company is void, first, because it attempts to destroy rights vested in the company by the contract. * * *
No power is reserved to Bayonne in this statutory enactment to retroactively increase a rate fixed by contract made pursuant thereto." (102 N.J. Eq., at pp. 478-9)
The court stated that from February 1925 (the date on which the resolution attempting to increase the rates was passed) until Bayonne should change the rate to all other equally large consumers for water supplied from said pipelines, i.e., in Bayonne as well as Kearny, Federal was entitled to the same sliding scale rate as that being charged to industrial consumers in Bayonne.
Plaintiff argues that the contract was made under the very statutory scheme which defendant relies on, and that the amendment to N.J.S.A. 40:62-127 cannot invalidate rights secured by R.S. 40:62-139. It also contends that its expenditures are analogous to those made in the Bayonne case, but defendant asserts that all applicants for main line extensions pay the cost thereof and the line becomes and remains its property.
Defendant argues that the amendment to N.J.S.A. 40:62-127 was intended merely to clarify existing law to the effect that a water commission may charge different rates to purchasers outside the limits of the municipalities owning the commission. The statement attached to Assembly Bill 715 (N.J.S.A. 40:62-127) says this, and there is at least an inference that this was the law from a reading of City of Clifton v. Passaic Valley Water Comm., 59 N.J. Super. 87 (Ch. Div. 1960). In that case the court held that Clifton was entitled to pay the same rates as Paterson and Passaic, and not the rates charged to "outside" municipalities which purchased water for distribution in their respective communities. It is for this reason that defendant says it had the right to increase rates in July 1960, prior to January 5, 1961, the effective date of the amendment to N.J.S.A. 40:62-127.
*208 The two statutes (N.J.S.A. 40:62-127 and 40:62-139) obviously conflict and confront the court with a problem of statutory construction. The cases and authorities are clear that statutes must be construed as a whole by reference to the general purpose and intent of the entire statutory scheme. In re Huyler, 133 N.J.L. 171 (Sup. Ct. 1945); 2 Sutherland, Statutory Construction, § 4703. Where two statutes are in pari materia, they should be reconciled and harmonized if possible into a consistent, homogeneous whole. Turon v. J. & L. Construction Co., 8 N.J. 543, 557 (1952); Hackensack Water Co. v. Ruta, 3 N.J. 139, 147 (1949). It is only where there is an irreconcilable conflict between the new provision and the prior statute relating to the same subject matter that the former will control, since it is the later expression of the Legislature. 2 Sutherland, supra, § 5201, at p. 532. The cases are also clear that implied repealers are not favored in the law, and the requisite intent will not arise by implication unless the subsequent statute is plainly repugnant to the former and is designed to be a substitute for the former. Goff v. Hunt, 6 N.J. 600, 606 (1951); Hartman v. Board of Chosen Freeholders, 127 N.J.L. 170, 174 (Sup. Ct. 1941). As to the question of whether the 1961 amendment is retrospective or prospective, our cases have evolved the rule that
"* * * words in the statute should not be given a retrospective operation unless the language be so clear, strong and imperative that no other meaning can be annexed to it, or unless the legislative intent cannot otherwise be satisfied. [Citing cases]." City of Newark v. Padula, 26 N.J. Super. 251, 258 (App. Div. 1953).
To the same effect are In re Glen Rock, 25 N.J. 241 (1957), and Morristown Electrical Supply Co. v. State, 4 N.J. Super. 216, 220 (App. Div. 1949).
The court believes that the 1961 amendment to N.J.S.A. 40:62-127 is prospective. The evidence that the amendment was to be retrospective is not so clear and strong that the statute should be given that construction. But even *209 if the statute were retrospective, it cannot be considered an implied repealer of R.S. 40:62-139. There is no irreconcilable conflict between the two sections, and 40:62-139 must be considered an exception to 40:62-127. Such a finding in no way impairs the statutory scheme.
Since the contract was given express legislative sanction, it follows that a later prospective statute in the same statutory scheme cannot impair plaintiff's vested contractual rights. This is not the same situation as where there are a private contractual right and subsequent governmental action, either by legislation or under rate-making powers.
The court has discussed the case of Federal Shipbuilding and Drydock Co. v. City of Bayonne, supra, which was decided under an analogous statute (R.S. 40:62-87). The court holds that decision as well as the afore-mentioned reasons as being dispositive of this case. The contract here was no different than the legislatively sanctioned contract in the Federal Shipbuilding case. In both situations the purchasers also gave an added consideration in return for the favorable rates. It therefore follows that plaintiff's motion for summary judgment on the first count will be granted and defendant's motion for summary judgment will be denied.
The remaining problem is the question of precisely what rate plaintiff is entitled to. The supplemental agreement acknowledged that Passaic, Clifton and Paterson own the waterworks operated by defendant commission. It also cited N.J.S.A. 40:62-127, then in effect, whereby "rates for the same kind or class of service shall be uniform in all the municipalities supplied by the waterworks." There was a further provision that plaintiff's rate would be "at its [defendant's] published scale of rates for industrial consumers as may be fixed from time to time by the commission in accordance with the provisions of the Statute above quoted."
The entire tenor of the agreement leads the court to the conclusion that plaintiff contracted for, and defendant agreed to supply water to plaintiff at what might be called the "most favorable rate" given by the commission. Obviously, *210 this must be the rate presently charged to the three city customers, because the 1961 amendment to N.J.S.A. 40:62-127 cannot affect plaintiff's vested contractual rights. To hold otherwise would be to render plaintiff's contract worthless. The parties agree that no other industrial consumer outside the three-city area is being charged at a rate greater than that of plaintiff. The court cannot attempt to determine what a reasonable rate for this plaintiff should be. Thus, a trial on the question of reasonableness would be unnecessary.
Plaintiff has established by affidavit (through a monthly breakdown) that the difference between what it paid for water and what the three-city rate for the same consumption would have been is $69,152.08 for the period July 1, 1960 to March 31, 1964. This fact is not denied by defendant.
In view of these observations the court has decided to grant judgment to plaintiff sua sponte on the second as well as the first count. Damages are assessed at the afore-mentioned difference of $69,152.08 between the outside and three-city rate for the period July 1, 1960 to March 31, 1964, plus such additional amount to be computed on a like basis for the month of April 1964 without interest. Commencing with the May 1964 charges, defendant is restrained and enjoined from charging plaintiff at a rate greater than that charged to industrial consumers within the municipalities of Passaic, Paterson and Clifton. The reason for this disposition is simply that there are no material facts to be determined at a trial. The court has interpreted the contract and the issues are purely legal. The matter is one which can and should be decided on motions for summary judgment.
Counsel may, pursuant to R.R. 4:55-1, submit a form of order in accordance with the views set forth in this opinion.